CONNECTICUT LABOR RELATIONS DIVISION OF the NEW ENGLAND ROAD BUILDERS ASSOCIATION, Incorporated, Petitioner,

v.

HOISTING AND PORTABLE ENGINEERS LOCAL 478 OF the INTERNATIONAL UNION OF OPERATING ENGINEERS, AFL–CIO, Respondent.

Civ. No. 12521.

United States District Court
D. Connecticut.
May 22, 1968.

William J. Larkin, 2d, of Larkin & Pickett, Waterbury, Conn., for petitioner.

Norman Zolot, Hamden, Conn., for respondent.

TIMBERS, Chief Judge.

### QUESTIONS PRESENTED

The New England Road Builders Association filed a petition in this Court on

April 29, 1968 pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1964), and Section 4 of the United States Arbitration Act, 9 U.S.C. § 4 (1964), to compel respondent, Hoisting and Portable Engineers Local 478 of the International Union of Operating Engineers, AFL–CIO, to arbitrate pursuant to a collective bargaining agreement entered into between the parties the question of whether various of petitioner's member companies must employ oilers on Pettibone Hydraulic Cranes. On May 16, 1968, petitioner filed an amendment to the original complaint which seeks arbitration of the additional questions of damages arising from claimed work stoppages allegedly caused by respondent in support of its demand that oilers be employed on the cranes and of damages resulting from the employment of oilers allegedly as a result of respondent's actions.[1] The petition presents essentially the following questions:

(1) Whether petitioner has standing to seek an order compelling arbitration of a dispute involving its member companies and respondent over the employment of oilers on Pettibone Hydraulic Cranes and alleged resulting work stoppages?

(2) Whether the issues which petitioner seeks submitted to arbitration are subject to arbitration pursuant to the grievance arbitration clause in the collective bargaining agreement?

After holding a hearing on May 20, 1968, and upon consideration of the oral arguments, the petition, affidavit, exhibits and petitioner's brief,[2] the Court concludes that petitioner has standing to seek an order compelling arbitration of the dispute and that the dispute in all its aspects is subject to arbitration pursuant to the arbitration clause in the collective bargaining agreement entered into by the parties. Accordingly, petitioner is entitled to an order compelling arbitration.

The Court makes the following findings of fact and conclusions of law in support of its order compelling arbitration.

## FINDINGS OF FACT

(1) Petitioner, Connecticut Labor Relations Division of the New England Road Builders Association, Inc. (hereinafter, "the association"), is an employer in an industry affecting commerce within the meaning of Sections 101 and 301 of the Labor Management Relations Act, 29 U.S.C. §§ 152 and 185 (1964).

(2) Respondent, Hoisting and Portable Engineers Local 478 of the International Union of Operating Engineers, AFL–CIO (hereinafter, "the union"), is a labor organization within the meaning of Sections 101 and 301 of the Labor Management Relations Act, 29 U.S.C. §§ 152 and 185 (1964).

(3) On April 6, 1967, the association and the union entered into a collective bargaining agreement (hereinafter, "the agreement"), effective for the period from April 1, 1967 through at least March 31, 1972.

(4) The foreword to the agreement provides that in entering into the agree-

---

1. Although the amendment enlarges upon the questions which petitioner seeks submitted to arbitration and was not filed in sufficient time to give respondent the five days' notice provided by Section 4 of the United States Arbitration Act, 9 U.S.C. § 4 (1964), counsel for respondent informed the Court at the hearing that respondent would not stand on such a technicality. It is also true that while the amendment contains additional questions for arbitration, these questions like the question in the original petition arise out of the demand by respondent that various of petitioner's members employ oilers on Pettibone Hydraulic Cranes. Therefore, the original petition together with the amendment will be referred to simply as the petition.

2. Upon inquiry by the Court at the hearing, counsel for respondent stated that he did not wish to file a written response or brief. However, as is usual with counsel for the respondent, his oral argument was clear, concise and most helpful to the Court.

ment the association was acting for and in behalf of and under the authority of its members, each member being an employer.

(5) Section 1 of Article XVII of the agreement provides:

"A grievance shall be defined as any dispute between the parties hereto during the terms of this Agreement. The Union, Employer or the Association may file and process a grievance."

(6) Section 2 of Article XVII of the agreement provides:

"Within 30 days after the execution of this Agreement, the Association and the Union shall each appoint individuals to serve as members of a Permanent Arbitration Committee (hereinafter referred to as the Committee). Two individuals from among the Union appointees to the Committee and two individuals from the Association appointees shall sit as a panel and hear all grievances which may arise between the parties to this Agreement regarding the interpretation or application of any of the terms of this Agreement, or regarding any other matter in dispute between the parties."

(7) Section 4 of Article XVII of the agreement provides in part:

"In the event of a grievance (which cannot be settled by the Employer and the Union or their representatives within four (4) days after the grieving party knew or should have known of the occurrence giving rise to the grievance), either the Employer or the Union shall submit the grievance to the Committee for determination, providing it notifies the other party and the Committee, by certified mail postmarked within six (6) days after the grieving party knew or should have known of the occurrence giving rise to the grievance, of the desire to arbitrate. . . ."

(8) Section 5(a) of Article XVII of the agreement provides in part:

"In the event that the panel cannot agree and adjust the difficulties be-tween the parties within four (4) days after it is first convened on the matter, then the members of the panel shall, within five (5) days after it is first convened select an Umpire with power to adjust the difficulty. Said Umpire shall be selected from the following list:

Milton Rubin        Clyde Summers
Robert Stutz        Peter Seitz
Burton Turkus

If the parties are unable to select the Umpire by mutual agreement, the Umpire shall be chosen by each party alternately eliminating one name from the above list and the last name remaining on the list shall be the selected Umpire. The first party to eliminate a name in the first case above shall be the Union and the next elimination that of the Association and alternately thereafter. In the following case the first elimination shall be that of the Association, and in succeeding cases the first elimination shall continue to alternate between the Union and the Association."

*    *    *    *    *    *

"The cost of the Umpire shall be divided equally between the Association and the Union."

Section 5(c) provides:

"The time limits set forth herein may be extended by written agreement between the Association and Union."

(9) Section 12 of Article XVII of the agreement provides:

"It is intended and agreed that the procedure herein established for the adjustment of grievances and disputes shall be the exclusive means for the determination of all grievances and disputes whatsoever, including the arbitrability of any grievance or dispute or any claim based upon an alleged breach of the no-strike, no lockout pledges of this Agreement. Neither the Employer, the Association or the Union shall institute any action or proceeding, in a court of law or equity, state or federal, other than to compel arbitration or to correct, confirm, va-

cate, modify or secure enforcement of any award or decision of the Permanent Arbitration Committee and/or Umpire. This provision shall be a complete defense to and also grounds for a stay of any action or proceeding instituted by any party contrary to this Agreement."

(10) On April 24, 1968, the association telegraphed the union as follows:

"WITH YOUR AUTHORIZATION REPRESENTATIVE OF LOCAL 478 RUOE HAVE INSTRUCTED OPERATORS OF PETTIBONES EMPLOYED BY WHITE OAK AND L G DEFELICE TO CEASE OPERATING THE PETTIBONES UNLESS COMPANIES EMPLOY AN OILER IN ADDITION TO THE OPERATOR SUCH WORK STOPPAGE WOULD BE IN VIOLATION OF ARTICLE 17 SECTION 9 OF OUR AGREEMENT TODAY WE HAVE REQUEST ARBITRATION CONCERNING THIS DISPUTE AS TO WHETHER OR NOT THE AGREEMENT REQUIRE THE EMPLOYMENT OF AN OILER ON THIS EQUIPMENT SAID REQUEST WAS DENIED WE ARE STILL READY AND WILLING TO ARBITRATE THIS GRIEVANCE PERSUIT TO ARTICLE 17 AND WILL COMPEL ARBITRATION UNLESS YOU ADVISE OF A CHANGE IN YOUR POSITION."

(11) On May 1, 1968, the association further telegraphed the union as follows:

"IN SPITE OF YOUR PREVIOUS REFUSALS THIS ASSOCIATION AND ITS MEMBERS AGAIN DEMAND IMMEDIATE ARBITRATION OF THE FOLLOWING

1. ASCERTAINMENT OF DAMAGES RESULTING FROM THE ILLEGAL WORK STOPPAGES AT WHITE OAK L G DEFELICE AND OTHER MEMBERS

2. ASCERTAINMENT OF DAMAGES RESULTING FROM YOUR COMPELLING WHITE OAK L G DEFELICE AND OTHER MEMBERS TO EMPLOY OILERS ON THE PETTIBONE AND SIMILAR EQUIPMENT."

The association alleges that the "other members" are American Construction Company, Inc., Raymond Construction Corporation and Oneglia & Gervasini Construction Company, Inc.

(12) White Oak Excavators, Inc., L. G. DeFelice & Son, Inc., American Construction Company, Inc., Raymond Construction Corporation, and Oneglia & Gervasini Construction Company, Inc. are members of the association.

(13) The union has refused to arbitrate the questions specified in the association's telegrams of April 24, 1968 and May 1, 1968.

## CONCLUSIONS OF LAW

(1) The Court has jurisdiction over the subject matter of, and the parties to, this action.

(2) The association has standing to invoke the grievance arbitration provisions of the agreement in behalf of its members.

(3) The question of whether the agreement requires employers to employ oilers on Pettibone Hydraulic Cranes is an issue which on its face is covered by the language of the grievance arbitration clause. Likewise, the issues of damages arising from alleged resulting work stoppages and compelled employment of oilers are covered by the grievance arbitration clause.

(4) The union in failing to arbitrate the issues raised by the association has breached the grievance arbitration clause of the agreement.

(5) The association is entitled to an order granting its petition to compel arbitration in accordance with the collective bargaining agreement of the following questions:

(a) Whether or not the agreement requires the employment of oilers on Pettibone Hydraulic Cranes?

(b) If the agreement does not require the employment of oilers on Pettibone Hydraulic Cranes, whether

or not the union has improperly compelled such employment and, if so, whether the employers are entitled to damages?

(c) Whether or not the union has violated the no-strike clause of the agreement and, if so, whether the employers are entitled to damages?

(d) All questions relevant and material to a determination of the foregoing issues.

## OPINION

The union does not deny that there exists a valid collective bargaining agreement between it and the association containing a clause requiring arbitration of all grievances and disputes between the parties.

The union, however, does claim that the dispute involved here is between the union and the individual member employers of the association and not the association itself. Therefore, the union contends that under the agreement only the employers have standing to demand and compel arbitration of the dispute. The union also contends that the dispute over the employment of oilers is not arbitrable because the agreement so clearly provides that oilers must be employed.

*Standing of the Association*

■ The question of a party's standing to seek arbitration must be determined by the Court and cannot be left to the arbitrator. John Wiley & Sons v. Livingston, 376 U.S. 543, 547 (1964); Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 241 (1962); Torrington Company v. Metal Products Workers Union, Local 1645, 347 F.2d 93, 96 (2 Cir. 1965), cert. denied, 382 U.S. 940 (1965); Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co., 312 F.2d 181, 184 (2 Cir. 1962), cert. denied, 374 U.S. 830 (1963). As stated by the Supreme Court in Atkinson v. Sinclair Ref. Co., supra, it "is a matter to be determined by the Court on the basis of the contract entered into by the parties."

■ Having considered the agreement, the Court is unable to concur in the union's contention that the association is without standing to invoke the grievance arbitration provisions of the agreement in behalf of its members. The foreword to the agreement specifically states the association in entering into the agreement was "acting for and in behalf of and under the authority of its members." The right of associations to enter into collective bargaining agreements in behalf of individual member employers is well established. Section 101 of the Labor Management Relations Act, 29 U.S.C. § 152 (1964). Cf. NLRB v. E. F. Shuck Construction Co., 243 F.2d 519, 521 (9 Cir. 1957); Red Star Express Lines of Auburn v. NLRB, 196 F.2d 78 (2 Cir. 1952); Employing Plasterer's Association of Chicago v. Operative Plasterers and Cement Masons International Association, 172 F.Supp. 337 (N.D.Ill.1959). But not only is it clear that the association was the employers' agent in entering into the agreement but it is also clear from the agreement that the association has full authority as the employers' agent to carry out the terms of the contract including invocation of the grievance arbitration provisions. Thus, Section 1 of Article XVII provides that an "Employer or the Association may file and process a grievance." It is the association and the union who select the members of the Permanent Arbitration Committee. Section 2 of Article XVII of the agreement. Furthermore, if this committee cannot settle a dispute "between the parties", then the parties must select an umpire from an agreed list by a process of elimination. According to Section 5(a) of Article XVII, "the first party to eliminate a name . . . shall be the Union and the next that of the Association and alternately thereafter." The cost of the umpire is to be divided equally between the association and the union. And it is by written agreement between the association and the union that time limits applicable to a particular dispute may be extended. Section 5(c) of Article XVII of the

agreement. While it is true that Section 4 of Article XVII provides that "the Employer or the Union shall submit the grievance to the [arbitration] Committee for determination", that clause is qualified by the words "in the event of a grievance . . . which cannot be settled by the Employer and the Union *or their representatives.*" (Emphasis added). Thus, neither this sentence nor the fact that association employers may be individually liable for breaches of the contract without being jointly liable (Section 2 of the Preamble) is sufficient to negate the apparent intent of the agreement to permit the association to represent its members in invoking the grievance arbitration procedure. Indeed, if the circumstances were such that it were the individual employers who were now petitioning the Court, one might very well expect the union to be arguing that it is only the association that has standing to be here.[3]

*Arbitrability of Dispute*

■■ The second issue raised by the union concerns the question of arbitrability. The general rule is that it is for the Court to determine the scope of an arbitration clause. John Wiley & Sons, Inc. v. Livingston, supra, at 546–547; Atkinson v. Sinclair Refining Co., supra; Drake Bakeries, Inc. v. Local 50, 370 U.S. 254, 256–257 (1962); United Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582–583 (1960); United Steelworkers v. American Mfg. Co., 363 U.S. 564, 568–569 (1960); Torrington Co. v. Metal Products Workers Union, supra, at 95–96; Local 12298, Dist. 50, United Mine Workers v. Bridgeport Gas Co., 328 F.2d 381, 383–384 (2 Cir. 1964). The rule is otherwise, however, if there is a clear provision in the collective bargaining agreement that the issue of the arbitrability of a particular dispute is to be determined by the arbitrator. Metal Products Workers Union Local 1645 v. Torrington Co., 358 F.2d 103, 105 (2 Cir. 1966). Here, there is such a clear pro-

vision. Section 12 of Article XVII provides that "it is intended and agreed that the procedure herein established for the adjustment of grievances and disputes shall be the exclusive means for determination of all grievances and disputes whatsoever, including the arbitrability of any grievance or dispute or any claim based upon an alleged breach of the no-strike, no lockout pledges of this agreement."

■■ The union admits that the dispute insofar as it arises from an alleged breach of the no strike agreement in the contract is arbitrable. The union, however, makes the rather novel argument that insofar as the issues which the association seeks arbitrated arise out of the employers' refusal to employ oilers on Pettibone Hydraulic Cranes, these issues are not arbitrable because the agreement so clearly provides that oilers must be employed on such cranes. The union, in other words, claims that there should be no arbitration of a dispute which in its opinion is so obviously resolvable against the party seeking arbitration. If in fact the dispute is so easily determinable, then the union can confidently expect the arbitrator to so determine it. The Court, however, finds that there is a bona fide dispute here and that the association is not abusing the processes of the Court by seeking arbitration as it has a right to do under the agreement.

■ In view of the foregoing and in view of the union's refusal to arbitrate the issues signified in the association's petition despite the association's prior demand that the union do so, the Court grants the association's petition for an order compelling arbitration.

ORDER

ORDERED that:

(1) Petitioner's motion to compel arbitration, as amended, is granted.

(2) Arbitration shall proceed as provided in the collective bargaining agree-

---

3. The Court, of course, does not rule on the validity of this hypothetical argument.

318

ment with respect to the following questions:

(a) Whether or not the agreement requires the employment of oilers on Pettibone Hydraulic Cranes?

(b) If the agreement does not require the employment of oilers on Pettibone Hydraulic Cranes, whether or not the union has improperly compelled such employment and, if so, whether the employers are entitled to damages?

(c) Whether or not the union has violated the no-strike clause of the agreement and, if so, whether the employers are entitled to damages?

(d) All questions relevant and material to a determination of the foregoing issues.