**LOCAL UNION NO. 1423, GLAZIERS, AFFILIATE OF the PAINTERS, DECORATORS, AND PAPERHANGERS OF AMERICA, AFL–CIO, Plaintiff,**

v.

**P. P. G. INDUSTRIES, INC., Defendant.**

**Civ. No. 72 F 15.**

United States District Court,
N. D. Indiana,
Fort Wayne Division.

June 12, 1974.

filed March 25, 1974 and on a cross-motion for summary judgment filed by defendant on April 8, 1974. For reasons set forth below, both motions will be denied.

This suit was brought pursuant to § 301 of the Labor Management Relations Act of 1947, Title 29 U.S.C. § 185. On October 1, 1969, the parties entered into a collective bargaining agreement which recognized the Union as the sole and exclusive bargaining representative for all employees performing work covered by said Agreement. Article II of that Agreement provided that the Union was to have sole jurisdiction over installment of

> all types of aluminum, bronze, or stainless steel materials used for facing and/or framing of buildings, store front construction, etc. All metal doors, glass doors, metal door frames, and any incidental work in connection therewith, also installation of any and all other work or material recognized by the Glazing Industry as glazier's work. . . .

The Agreement also contained in Article XVII provisions for grievance and arbitration machinery. It provided that "any controversy or dispute as to the meaning or application of the provisions of this agreement: will be referred to such machinery."

On or about August 28, 1970, Wright Construction Company informed defendant that its bid to furnish and install glass, glazing, mirrors and installation of an aluminum walkway (a Mapes Free Standing Canopy) for the Central Noble (Albion) High School project had been accepted. Construction began on or about the first day of November, 1971. Plaintiff alleges that under the provisions of the construction subcontract, the defendant had sole jurisdiction over the installation of aluminum, bronze or stainless steel materials used in the construction. The uncontroverted facts indicate that the job of constructing the Mapes Canopy was awarded to the Iron Workers. This determination was made by the Erection Center, a subdivision of P. P. G.

Max E. Hobbs, Fort Wayne, Ind., for plaintiff.

George T. Dodd, Fort Wayne, Ind., for defendant.

## MEMORANDUM OF DECISION AND ORDER

ESCHBACH, District Judge.

This cause is before the court on motion of plaintiff for summary judgment

Industries, Inc., which obtained the iron workers at the hiring hall for Local 147 of the International Association of Bridge, Structural, and Ornamental Iron Workers. Plaintiff contends that the local collective bargaining agreement between it and defendant requires that defendant assign work of this type involving aluminum construction to plaintiff. It is alleged that the failure of defendant to assign this type of work to plaintiff violated the local collective bargaining agreement. Plaintiff sought to resolve this dispute by resort to the local collective bargaining agreement's Article XVII grievance and arbitration machinery. Defendant, it is alleged, refused to arbitrate. Consequently, plaintiff brought this action for an order to compel arbitration of this dispute.

Defendant admits the fact that the work was assigned to the Iron Workers. However, defendant argues that the October 1, 1969 agreement does not constitute the entire collective bargaining agreement between the parties. Defendant points out that on April 3, 1970, the Building and Construction Trades Department, AFL–CIO, entered an agreement with Participating Contractors Employers' Associations entitled "Plan for Settling Jurisdictional Disputes Nationally and Locally." That plan establishes a National Joint Board for the Settlement of Jurisdictional Disputes in the building and construction industry. Article II, Section 4 of the plan provides that it shall be the duty of the Joint Board to decide cases of jurisdictional disputes in the building and construction industry. Article III, § 7 provides that employers who employ members of the organizations affiliated with the Building and Construction Trades Department, AFL–CIO shall be considered bound by the agreement only after signing a stipulation setting forth that they are willing to subscribe to and be bound by the terms of the agreement. It is alleged by defendant that plaintiff is a member of the Building and Construction Trades Department and is bound by the agreement. Defendant also alleges that it has stipulated to the plan by action of the employers associations of which it is a member.

Finally, defendant contends and plaintiff denies that the matter in controversy is a jurisdictional dispute which plaintiff was bound to submit to the Joint Board and that only the union has the power to submit disputes and that plaintiff failed to submit the dispute. Consequently, defendant argues that submission to the Joint Board was plaintiff's only remedy and that the arbitration clause does not apply to this dispute.

■ This action was brought under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185(a), seeking an order to compel arbitration. It cannot be disputed that this court can grant specific performance of promises to arbitrate grievances. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). However, the function of the court in cases to compel specific performance of arbitration agreements is very limited. As a matter of law, the court only has jurisdiction to determine whether the dispute presented is one covered by the arbitration provision of the collective bargaining agreement. Int'l Union of Operating Engineers, Local 150 AFL–CIO v. Flair Builders, Inc., 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972); United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). Therefore, the only issue which this court has the jurisdiction to determine is whether a dispute exists which according to the terms of the agreement of the parties is one which must be committed to arbitration for resolution.

■ Neither side contests the fact that a dispute does exist. A dispute exists whenever one party to the agree-

ment accuses the other of a violation and the other party denies such violation. United Steelworkers of America v. American Mfg. Co., *supra* at 569, 80 S.Ct. at 1347; International Union of Operating Engineers, Local 103 v. Crown Constr. Co., Civil No. 70 F 21 (N.D. Ind., Aug. 11, 1970). However, the instant action varies from the paradigm case seeking an order to compel arbitration under § 301 in several very critical respects. Although both parties recognize the existence of a dispute, plaintiff argues that while the dispute may have arisen out of an assignment of work, this is not a classical work assignment dispute as defendant argues. Plaintiff states that a work assignment dispute or a jurisdictional dispute is normally one between two unions involving each union's claim that a particular job should have been assigned to it. Since this suit is only between the union and the contractor, and since no other union has contested the work assignment, this action cannot be characterized as a jurisdictional dispute, but, rather, is a dispute which involves an interpretation or application of the "recognitional" clause of the local agreement. Defendant argues that this is a jurisdictional dispute which must be submitted to the Joint Board.

Although plaintiff's argument has some surface appeal, a closer analysis reveals that plaintiff ignores the reality of the situation as it existed in the fall of 1971. At that time, in addition to the local collective bargaining agreement between these parties and the "Joint Board Agreement," there existed an agreement on a national scale between the International Association of Bridge, Structural and Ornamental Iron Workers and the Brotherhood of Painters, Decorators and Paperhangers of America. The express purpose of that agreement was to facilitate the settlement of jurisdictional disputes between the two unions and establish an understanding which would mutually assist each union to secure and to perform work coming within its jurisdiction. Section I of the agree-

ment provides that the Iron Workers shall have jurisdiction

> over the erection of structural and miscellaneous steel; the erection of metal subframing and supports for work described in this agreement; the erection of factory-fabricated windows and sash; the fabrication and erection of ornamental metal, except as qualified in this agreement.

The Iron Workers recognize the jurisdiction of the Brotherhood of Painters, Decorators and Paperhangers of America over

> the painting on the job site of all material; the installation of all glass; the fitting, cutting and installation of all glass-retaining moldings and typical division bars. Also ornamental metal referred to as Glazier's work in Sections IV, V and VI of this agreement, provided that the work is in the glass or glazing contractor's contract.

Section IV provides that the installation of metal entrances in schools is the work of the Iron Workers except for metal entrances with tubular doors not exceeding 125 square feet, which shall be the work of the Glaziers. By agreement and stipulation, the National Joint Trade Board of the Glass and Glazing Industry agreed in February of 1961, on behalf of its affiliated members, to assign work in accordance with the agreement between the Iron Workers and the Glaziers. Under the terms of that agreement, the Iron Workers agreed to perform work recognized to be within its jurisdiction without the necessity of the glazing contractor being signatory to the applicable local collective bargaining agreement with the Iron Workers. Defendant alleges that its predecessor was an affiliated contractor of the National Joint Trade Board and that it made the work assignment in question according to the terms of the Iron Workers-Glaziers agreement. In addition, the deposition testimony of C. J. Martin, an officer of defendant, stated at page 23 that defendant did have a national contract with the Iron Workers. Although this court is not permitted

to look at the merits of the dispute or decide who should have been awarded the work, it is clear that the Iron Workers-Glaziers agreement indicates that jurisdictional disputes between these two unions are common. It was only after the defendant assigned the work of construction of the aluminum walkway and canopy (Mapes Canopy) that plaintiff sought to submit to arbitration what it referred to in paragraph six of its complaint as "the question of the assignment of work." The court accepts plaintiff's argument that this dispute does not contain all the usual elements of a jurisdictional dispute. In this action, defendant is not faced with the conflicting claims of two unions, each seeking jurisdiction over the work. However, that fact alone does not mean that the dispute is any less one over jurisdiction. The dispute arose when the contractor awarded a job to one union and was then proceeded against by a second union which claimed that it should have been awarded the job. A dispute between two unions with the contractor in the middle was only avoided because of the method which the plaintiff chose to pursue to seek resolution of its claim against the contractor. Since plaintiff chose to proceed under the arbitration machinery to which the Iron Workers' Union was not a party, and since the Iron Workers were proceeding with the work during the pendency of plaintiff's legal action, there was no reason for the Iron Workers to become involved. Nevertheless, the contractor is still in the middle, for if the union is correct in its claims, the contractor will be forced to pay twice for the same work. When viewed in this posture, the court can only conclude that this is a work assignment-jurisdictional dispute.

It was necessary to set out at length the nature of this dispute in order to demonstrate the novelty of the question before the court. There are several factual differences between the instant action and the typical § 301 suit to compel arbitration. The fact that a jurisdictional dispute is involved does not preclude an order compelling arbitration

where both unions have agreed to arbitrate disputes. *See* Columbia Broadcasting System, Inc. v. American Recording and Broadcasting Ass'n, 414 F.2d 1326 (2d Cir. 1969). However, in its most synthesized form, the issue before the court is not whether this dispute is one which must be submitted to arbitration or left to the dispute resolution machinery provided by the NLRB or the courts. The issue raised by the motions before the court is whether this dispute is subject to the arbitration machinery established in Article XVII of the local agreement between the parties or whether plaintiff's proper remedy was provided by the dispute resolution machinery of the Joint Board. In short, this issue is which of two forms of dispute resolution, established in the system of industrial self-government, must be utilized to settle the instant dispute.

In United Steelworkers of America v. American Mfg. Co., *supra*, the Court quoted from § 203(d) of the Management Relations Act, 1947, 29 Labor U.S.C. § 173(d), which states:

Final adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement. : . . *Id.*, 363 U.S. at 566, 80 S.Ct. at 1346.

The Court went on to state that the policy reflected in § 203(d) can only be effectuated if the means chosen by the parties for settlement of any differences under a collective bargaining agreement is given full play. *Id.* The Court later stated, ". . . we think special heed should be given to the context in which collective bargaining agreements are negotiated and the purpose which they are intended to serve." *Id.* at 567, 80 S.Ct. at 1346. *See also* Drake Bakeries Inc. v. Local 50, 370 U.S. 254, 263, 82 S.Ct. 1346, 1352, 8 L.Ed.2d 474 (1962). The local agreement between the parties and the Joint Board agreement each arose in specific, separate contexts and each

was meant to deal with certain problems. For this court to pay deference only to the local agreement and ignore other agreements which were entered into to deal with prevalent and wide-reaching problems would require the court to ignore the above-stated policy. The local agreement and the "recognition clause" serve a different purpose than does the Joint Board Agreement. The "recognition clause" serves to indicate that the employer acknowledges that the union represents employees engaged in performing the work delineated in that clause. But whether a particular job involves that type of work or whether the particular work falls under the jurisdiction of another union often, as in the instant case, involves a dispute which the Joint Board Agreement was intended to resolve. It was for the purpose of resolving such disputes that the Joint Board machinery was established. Plaintiff urges that this court consider only the local agreement as relevant to the question of arbitrability. Yet to require this court to ignore the other agreements which have a direct bearing on this question would be tantamount to forcing the court to ignore both the law relevant to § 301 issues and the dispute resolution devices which the parties have adopted to facilitate solution to problems prevalent in the industry. The entire thrust of the "Steelworker's Trilogy" cases is that the efforts of employers and employee representatives to effectuate industrial stabilization is to be given full recognition by the courts. To adopt plaintiff's arguments would force the court to ignore certain efforts to promote such stabilization. Although the factual context of the "Steelworker's Trilogy" cases involved disputes which arose only under the collective bargaining agreement, the rationale of those cases requires that the court consider the entire system of industrial self-government in order to determine which machinery was intended by the parties to be utilized for resolution of a dispute. As stated ·in United Steelworkers of America v. Warrior & Gulf Nav. Co.,

*supra*, the choice is one of having the industrial relationship

. . . governed by an agreed-upon rule of law or leaving each and every matter subject to a temporary resolution dependent solely upon the relative strength, at any given moment, of the contending forces. *Id.*, 363 U.S. at 580, 80 S.Ct. at 1352.

A collective bargaining contract is not an ordinary contract. Rather, it is a general code to deal with many types of unanticipated problems. The collective bargaining agreement covers the whole employment relationship. "It calls into being a new common law—the common law of a particular industry or of a particular plant." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 550, 84 S.Ct. 909, 914–915, 11 L.Ed.2d 898 (1964). Jurisdictional disputes have been a constant bane in the building and construction industry. Any attempt to set up machinery for the peaceful resolution of such disputes must necessarily require the participation of many employer groups and employee representatives. The National Joint Board was the result of such an endeavor in the building and construction industry. The Joint Board machinery was set up for the express purpose of dealing with such disputes and for effectuating settlement of such disputes equitably and without crippling work stoppages. Since the national agreement to establish the Joint Board machinery is specifically directed at the instant problem and since it is part of the general code governing the employment relationship, it is the decision of this court that not only the local agreement but also national agreements which these parties have accepted must be considered in determining the proper and applicable procedure for the resolution of this dispute.

The plan for settling jurisdictional disputes was made effective on April 3, 1970 after the local agreement had been entered. Section 9 of Article III of the agreement provides that

It shall be a violation of this agreement for any local union, international un-

ion, employer or employers' association to enter into any agreement, resolution or stipulation that attempts to establish any jurisdiction which deviates from the spirit and intent of the Agreement and Procedural Rules of the Joint Board Plan.

Although the local agreement was entered into before the plan for settling jurisdictional disputes, Section 9 of Article III indicates that the Joint Board machinery was to govern the entire industry and that inconsistent local plans were prohibited. Section 1 of Article IV of the plan for settling jurisdictional disputes provides that local *jurisdictional dispute* resolution machinery must first be utilized before resort to the Joint Board. Reading Section 9 of Article III together with Section 1 of Article IV indicates that local machinery must first be resorted to only if it provides for resolution of jurisdictional disputes and only then if it does not deviate from the intent of the Agreement and Procedural Rules of the Joint Board Plan. The arbitration clause is not the type of local machinery contemplated in Section 1 of Article IV because arbitration can only bind the Glaziers Union and has no impact on the Iron Workers. Any requirement that arbitration be resorted to, as provided in Article XVII of the local agreement, for settlement of disputes of this nature would be inconsistent with the subsequent agreement of the parties to submit such disputes to the Joint Board. If defendant had submitted to arbitration and if the arbitrator had found for plaintiff, the defendant would then face an arbitration order which would require him to award the work to plaintiff. At the same time, the defendant would be bound by his agreement to abide by the procedures of the Joint Board which provide that once an award of work has been made by the contractor, it must not be changed unless so ordered by the Joint Board or unless the two unions involved agree to the change. (See Rule 4, Contractor's Responsibility, Procedural Rules and Regulations of the National Joint Board.) Clearly, any arbitration order would not bind the Iron Workers because they are not party to the local agreement. Similarly, since the Iron Workers are not party to an arbitration agreement, this court cannot order tripartite arbitration as in the *Columbia Broadcasting* case cited above. Only when disputes of this nature are submitted to the Joint Board will all parties concerned be provided with an adequate hearing and a binding order. Furthermore, Rule 2 under Contractor's Responsibility in the Procedual Rules and Regulations of the National Joint Board requires the contractor to make a specific assignment of the work. Rule 3a requires that where an agreement of record exists between the disputing trades which is applicable to the disputed works, the contractor shall assign the work according to such agreement. Defendant has argued that the work in question was assigned according to the agreement between the Glaziers and the Iron Workers. In Rule 2 under Union's Responsibility a remedy is provided to a union which disputes the work assignment. Rule 2 provides

> When a contractor has made a specific work assignment, all unions shall remain at work and process any complaint over a jurisdictional dispute in accordance with the procedures herein established by the Joint Board.

Upon receiving such a complaint, the Joint Board Agreement provides in Section 4 of Article II that:

> It shall be the duty of the Joint Board to consider and decide cases of jurisdictional disputes in the building and construction industry, which disputes are referred to it by any of the International Unions involved in the dispute, or an employer directly affected by the dispute on the work in which he is engaged or by a participating organization representing such employer.

Section 9 of Article III provides that:

> When the Joint Board receives a protest of an alleged violation from an in-

ternational union, an employer or an employers' association, it shall proceed to make a decision and to determine the action which should be taken to correct the violation consistent with the applicable legal obligations of the parties.

Clearly, the plaintiff's remedy was to be found not in arbitration but in submission of the dispute to the Joint Board. It is clear that the procedure established under the Joint Board agreement provides a quick and efficient means of resolving jurisdictional disputes which other modes of arbitration are incapable of handling. The Joint Board has a particular expertise and knowledge of the building and construction industry and its unique problems and solutions therefor which an arbitrator may not possess. The Joint Board can bind all parties involved whereas the arbitrator cannot bind the Iron Workers. It is not inconceivable that an employer can find himself facing inconsistent arbitration orders. *See, e. g.*, Newspaper and Mail Deliverers' Union of N. Y., 141 N.L.R.B. 578, 52 L.R.R.M. 1339, 1963 CCH NLRB ¶ 12,-172 (1963). The Joint Board procedures have been established to prevent crippling work stoppages in the building and construction industry and to provide that contractors can assign work in good faith without fear of being thrust into the middle of a dispute between unions and perhaps being forced to pay twice for the same job. The NLRB has recognized that no Section 10(k), 29 U.S.C. § 160(k), jurisdiction exists when two unions and an employer have agreed to submit to Joint Board machinery. *See* Local 75 v. Stearns-Roger Corp., 184 N.L.R.B. #30, 74 L.R.R.M. 1440, 1970 CCH NLRB ¶ 22,125 (1970) and Local 708 and Armco Drain & Metal Prod. Co., 137 N.L.R.B. 1753, 50 L.R.R.M. 1502, 1962 CCH NLRB ¶ 11,493 (1962). The NLRB recognizes the Joint Board as an agreed upon method of voluntary dispute adjustment for Section 10(k) purposes. This court will not destroy the mechanism which the industry has adopted to settle its jurisdictional disputes by deciding that arbitra-

tion is an alternative to submission to the Joint Board. If it can be proven that these parties were in fact bound by all the agreements referred to, it is clear that it was intended that disputes in the nature of the instant dispute be submitted to the Joint Board, not the grievance and arbitration machinery provided in Article XVII of the local agreement. Consequently, the court must deny plaintiff's motion for summary judgment at this time.

In reaching this decision, the court finds persuasive the case of Sheet Metal Workers Local 17 v. Aetna Steel Prod. Corp., 359 F.2d 1 (1st Cir. 1966), cert. denied, 385 U.S. 839, 87 S.Ct. 86, 17 L.Ed. 2d 72. That case was brought pursuant to § 301, seeking damages and a decree enjoining the enforcement of an arbitration award which arose out of a jurisdictional dispute. The case presented a test of the Joint Board machinery set up to deal with jurisdictional disputes in the construction industry. The court set forth in detail the "tortuous history of the controversy" and concluded that an excessively legalistic approach was inappropriate to the technical and pragmatic problems involved in arriving at a fair and workable jurisdictional solution. *Id.* at 4. The court approached the problem with a "necessary respect of and tolerance for the arbitration process." *Id.* at 5. After setting forth the principles established by the "Steelworkers Trilogy," the court concluded:

> We may observe that if such force is to be given to collective bargaining agreements between management and unions, no less support should be given to agreements to which unions resort to resolve their jurisdictional disputes. There is no question here but that the dispute falls within the kinds of controversy envisaged. *Id.* at 5.

Although the case involved a classical jurisdictional dispute where both unions were parties and although the issue did not involve the question of whether a local arbitration clause governed the dispute, the clear import of the decision is that the Court recognized the Joint Board

as a system of arbitration. The Court recognized that the principles of the "Steelworkers Trilogy" applied to a question of whether a dispute must be submitted to the Joint Board and did not find itself constrained from considering any national agreements between the parties.

▬ The instant issue is a novel and difficult one. It does not involve precisely a question of whether a dispute was intended by the parties to be submitted to arbitration. Rather, the question is which of two systems of arbitration machinery was intended by the parties to be utilized to resolve the dispute. This court would not hesitate to decide that the Joint Board machinery and not arbitration was intended by the parties to resolve disputes of this nature if it had been proven that both sides were bound by all the agreements set forth. However, in denying plaintiff's motion for summary judgment the court must also deny defendant's motion for summary judgment. The only evidentiary matters presented to the court by the parties were certain interrogatories and the deposition of C. J. Martin. Unfortunately, these evidentiary matters were insufficient to clarify all factual problems. A court should not grant a summary judgment until the facts have been sufficiently developed to enable it to decide with reasonable certainty that it is making a correct determination of the law. N.L.R.B. v. Smith Indus. Inc., 403 F.2d 889, 893 (5th Cir. 1968). Certain material facts remain which were not contested by the parties but which have not been clearly established.

Defendant has alleged that plaintiff is an affiliate of the Building and Construction Trades Department, AFL–CIO but has not presented an admission of this fact or any affidavit or other evidence to establish it as factually true. In Lathers Union, 119 N.L.R.B. 1345, 41 L.R.R.M. 1293, 1957–58 CCH NLRB ¶ 55,132 (1958), the board held that the agreement of the Building and Construction Trades Department to be bound by the Joint Board binds all its affiliates through the provisions of its constitution. Yet, it remains in the instant case for defendant to establish that plaintiff is an affiliate of that organization.

▬ It is also clear that employer's associations have the right to enter into binding agreements on behalf of their members. Connecticut Labor Rel. Div. of New England Road Builders Ass'n v. Hoisting and Portable Engineers, Local 478, 285 F.Supp. 311, 316 (D.C.Conn. 1968); Employing Plasterers Ass'n of Chicago v. Operative Plasterers and Cement Masons Internat'l Ass'n, 172 F. Supp. 337, 341 (N.D.Ill.1959). However, there was no evidence presented that defendant is a member of the Participating Contractors Employers' Associations which entered the Joint Board Agreement. Nor is there proof that defendant is an affiliated contractor of the National Joint Trade Board of the Glass and Glazing Industry which agreed to adhere to the agreement between the Iron Workers and the Glaziers on work assignments.

▬ Section 7 of Article III of the Joint Board Agreement provides that:

It is understood only those contractors who employ members of the organizations affiliated with the Building and Construction Trades Department of the AFL–CIO shall be considered as bound by this agreement when they have signed a stipulation setting forth that they are willing to subscribe to and be bound by the terms and provisions of this agreement.

Defendant has not established by exhibit or otherwise that it had accepted the terms of the Joint Board Agreement and had indicated its willingness to be bound by the terms and provisions of that agreement. Whether defendant complied with Section 7 of Article III is a crucial fact, for upon it hinges the question of whether the defendant did agree to submit such disputes to the Joint Board. Since this essential fact was not established, this court cannot grant defendant's motion for summary judgment.

Finally, it was pointed out that the defendant alleges that the work assignment

was made in accordance with Rule 3(a) under Contractor's Responsibility of the Procedural Rules and Regulations of the National Joint Board. In his deposition testimony, C. J. Martin testified that work assignments were usually made in accordance with the "Blue Book," which apparently is the name given to the agreement between the Iron Workers and the Glaziers. Yet, it is a factual question whether the "Blue Book" is an "agreement of record" as used in Rule 3(a). Whether it is an "agreement of record" according to Rule 3(a) depends on whether or not it is compiled in the "Green Book" published by the Building and Construction Trades Department, AFL–CIO, which is properly entitled "Agreements and Decisions Rendered Affecting the Building Industry."

Plaintiff has not proven that this dispute is one which the parties intended to submit to arbitration rather than one proper for determination by the Joint Board. This court has decided that if the parties in this action are bound by the Joint Board Agreement, then the dispute should have been submitted to that board. Nevertheless, defendant has failed to adequately prove that the parties were bound by the Joint Board Agreement or that the work was assigned according to that Agreement. Consequently, this court must deny each party's motion for summary judgment.

### ORDER

Accordingly, it is the order of this court that plaintiff's motion for summary judgment be and hereby is denied, and it is the further order of this court that defendant's motion for summary judgment be and is hereby denied; provided, however, each side is given fifteen (15) days from the date of entry of this order in which to submit further materials, including stipulations and exhibits, in an effort to establish the relevant facts not previously established and which have precluded this court from entering summary judgment for either side.