**BECHTEL CORPORATION and Bechtel Power Corporation, Appellants,**

v.

**LOCAL 215, LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO et al.**

No. 76–1048.

United States Court of Appeals, Third Circuit.

Argued Sept. 10, 1976.

Decided Nov. 12, 1976.

Haggerty & McDonnell, Scranton, Pa., Bond, Schoeneck & King, Syracuse, N. Y., for appellants.

Ira H. Weinstock, James L. Cowden, Handler, Gerber & Weinstock, Harrisburg, Pa., for appellees.

Before ADAMS, ROSENN and GARTH, Circuit Judges.

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal presents several important issues pertaining to the proper forum for the determination of an employer's claim for damages growing out of two separate work stoppages allegedly in violation of labor contracts. The work stoppages resulted from jurisdictional disputes between Local 215, Laborers International Union of North America, AFL–CIO ("Local 215" or "the Union") and two other unions over assignment of work at a construction site in Berwick, Pennsylvania, where Bechtel Corporation and its wholly owned subsidiary Bechtel Power Corporation ("Bechtel") are engaged in the construction of two nuclear power plants.

I.

The power plants are known collectively as the Susquehanna Steam Electric Generating Station and their construction commenced in October 1973 and is scheduled for completion in 1981. Bechtel employs approximately 1200 manual building trades employees at the two construction sites and has contracted with subcontractors who employ approximately 100 additional persons. Wages, hours, and working conditions for Bechtel's employees are governed by the terms of several collective bargaining agreements entered into between Bechtel or its representative and various unions, including Local 215.

Bechtel alleges that in November 1974 a jurisdictional dispute arose between Local 215 and Local 489 of the Ironworkers Union concerning the performance of certain work on the power plants.[1] Thereafter, on December 16 and 17, 1974, representatives of Local 215 induced a work stoppage and picketing at the project, resulting in the refusal to work of a majority of Bechtel's employees. In February 1975, a second jurisdictional dispute arose, this time between Local 215 and the Plumbers and Pipefitters Union, Local 254. This controversy also resulted in a work stoppage and picketing, for which Bechtel alleges the defendant Local 215 was responsible.

On February 24, 1975, Bechtel, as plaintiff, filed a complaint in the United States District Court for the Middle District of Pennsylvania alleging claims for damages because of Local 215's violations of its contractual obligations with Bechtel and of the Labor Management Relations Act. One

1. On reviewing the district court's order directing the parties to submit their dispute to arbitration, we must take all material allegations of the complaint as true. *See Knuth v. Erie-Crawford Dairy Cooperative Assoc.*, 395 F.2d 420 (3d Cir. 1968).

claim was asserted under section 301 and the other under section 303 of the Act, as amended, 29 U.S.C. §§ 185, 187 (1970), ("the Act").[2] Local 215, the defendant, filed motions to dismiss both causes of action and a motion for a more definite statement.[3] By its motions to dismiss, Local 215 contended that (1) the proper forum for resolving Bechtel's section 301 claim is arbitration under the contracts, not the district court, and (2) the section 303 action should be dismissed pending arbitration of the section 301 claim.

The district court denied the Union's motion to dismiss but it entered an order directing the parties to submit the breach of contract claims to arbitration in accordance with the collective bargaining agreements entered into between the parties. It also stayed Bechtel's section 303 claim pending arbitration or until further order of the court. In staying Bechtel's section 303 claim, the district court indicated that the underlying jurisdictional dispute between the unions also should be arbitrated and that the arbitration should also determine whether Local 215 was entitled to the work in dispute. Bechtel appealed to this court.[3A] We affirm, although our reason for staying the section 303 action differs significantly from that set forth by the district court.

On appeal, Bechtel contends that the district court erred (1) in directing arbitration of its section 301 claim in the face of the express exclusion of such claims from arbitration under the collective bargaining agreement, and (2), in staying the trial of its claim under section 303 pending a determination by an arbitrator as to which union is entitled to the work for which Local 215 struck, and (3) in concluding that a union which strikes over an assignment of work may not be held liable for damages under section 303 if the striking union is ultimately determined to be entitled to the disputed work.

## II.

Bechtel claims in the action it instituted in the district court that the work stoppages induced by the union violated a "no-strike" provision of the collective bargaining agreement between it and the union and it seeks damages in the sum of $60,000. The Union concedes in its brief in this court that section 301 of the Act "permits a party to a labor contract to sue in federal court for breaches of that contract." An action under section 303 also lies when an employer in an industry affecting interstate commerce sustains damages when a union engages in a jurisdictional strike that is unlawful under section 8(b)(4)(d) of the Act, 29 U.S.C. § 158(b)(4)(d).[4] The Company

2. Section 301(a), 29 U.S.C. § 185(a) provides:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

3. Local 215 also moved to dismiss Bechtel's action against two named individual defendants, Henry DePolo, its business manager, and Andrew Pollick, its business agent. Bechtel did not oppose the motion and, accordingly, it was granted. The motion for a more definite statement was denied without prejudice to review. Neither of these motions is in issue on appeal.

3A. The Company brings this appeal under authority of 28 U.S.C. § 1292(a). The order compelling arbitration and staying both actions is an order granting an injunction, *Mason-Dixon Lines, Inc. v. Local 560, Teamsters*, 443 F.2d 807, 808 (3d Cir. 1971). *See also Gavlik Constr. Co. v. H. F. Campbell Co.*, 526 F.2d 777, 782 (3d Cir. 1975) ("To the extent that the district court ordered proceedings stayed . . . this Court has jurisdiction pursuant to 28 U.S.C. § 1292(a)(1)").

4. Section 8(b)(4)(d) provides in pertinent part:

(b) It shall be an unfair labor practice for a labor organization or its agents—

(4)(i) to engage in . . . a strike . . or

(ii) to threaten, coerce or restrain any person engaged in commerce or in any industry affecting commerce, where in either case an object thereof is—

(D) Forcing or requiring any employer to assign particular work to employees in a particular labor organization . . . unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work . . . .

alleged that the work stoppages and strike were conducted in violation of section 8(b)(4)(d) and that it suffered damages as a result of the union's conduct. The resolution of the issues depends in large part on the interpretation of two separate collective bargaining agreements entered into between Bechtel and the Union.

On October 2, 1973, Bechtel entered into a written collective bargaining agreement with various trade unions representing employees on the power plants project. Among the signatories to that contract ("Local Agreement") were Local 215 and Bechtel. Article XI specifically prohibited "strikes, work stoppages, or slowdowns of any kind, for any reason, by the Unions or employees" and Article XII [5] provided for the assignment of work by the employer and the settlement of jurisdictional disputes specifically by the National Joint Board. The arbitration article of the contract, Article XIII, however, was qualified and provided:

> [T]he parties hereby agree that all questions or grievances involving the meaning, interpretation, and application of this Agreement *other than trade jurisdictional disputes arising under Article XII or damages arising from any work stoppage or lockout,* shall be handled [by arbitration]. [Emphasis supplied.]

In defining the scope of the "Local Agreement," the parties provided in Article II thereof:

> The provisions of this Agreement shall apply to the construction of the Susquehanna Steam Electric Generating Station notwithstanding provisions of local or national union agreements which may conflict or differ with the terms of this Agreement . . ..

On November 1, 1973, one month after Bechtel and Local 215 signed the Local Agreement, the Laborers International Union of N.A. entered into a collective bargaining agreement (the "National Agreement") with the National Constructors Association ("Association"). Local 215 is a unit of the International Union and Bechtel is a member of the Association. In contrast with Article II of the Local Agreement, Article I of the National Agreement provides that its provisions "shall prevail" where "the provisions of Local Union agreements conflict." In contradistinction to Article XIII of the Local Agreement, Article XV of the National Agreement provides for arbitration of *all disputes*, excepting jurisdictional disputes. It reads:

> It is specifically agreed that there shall be no strikes, lockouts or cessation or slowdown of work or picketing over any dispute over the application or interpretation of this Agreement, and that all grievances and disputes, *excluding jurisdictional disputes*, shall be handled [by arbitration]. [Emphasis supplied.]

As to jurisdictional disputes, Article XIV of the National Agreement set forth the following procedure:

> Section 1
>
> It is agreed that the assignment of work and the settlement of disputes shall be in accordance with the "Plan for the Settlement of Disputes in the Construction Industry," dated June 1, 1973, or its successor.
>
> Section 2
>
> There shall be no stoppage of work or slowdown by employees because of jurisdictional disputes.

In construing the Local and National Agreements, the learned district judge held that in view of the conflicting terms of the arbitration articles in the agreements and despite the provisions in each for the superiority of its terms and provisions, the National Agreement, as the contract executed last in time, "prevails." He therefore concluded that the action for damages resulting from a breach of the collective bargain-

5. The pertinent language of Article XII is as follows:

> Work shall be assigned by the Employer in accordance with the procedural rules of the National Joint Board for the Settlement of Jurisdictional Disputes in the Building and Construction Industry, and jurisdictional disputes will be settled in accordance with the procedural rules and decision of the National Joint Board or any other successor agency . . ..

ing agreement was arbitrable under the National Agreement.

Our primary task is (1) to determine whether the two agreements do in fact conflict on the question of the arbitration of damage claims; and (2) if the agreements are in conflict, determine whether the district court erred in holding that the National Agreement prevails.

In deciding these questions, the substantive law we must apply to suits under section 301 is federal law. "Federal interpretation of the federal law will govern, not state law." *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456–57, 77 S.Ct. 912, 918, 1 L.Ed.2d 972 (1957). It is well settled that the question of the scope of the parties' agreement to arbitrate is, under that law, a question committed to the court.[6] *Atkinson v. Sinclair Refining Co.,* 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1961). The terms of the contracts before us are also to be construed according to substantive federal law. *Textile Workers, supra,* 353 U.S. at 457, 77 S.Ct. 923. *See also Jersey Central Power & Light Co. v. Local 327, IBEW,* 508 F.2d 687, 699 n. 32 (3d Cir. 1975); *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123 (3d Cir. 1969).

The first question we must answer is whether the two agreements conflict with each other. Bechtel contends that there is no conflict between the two agreements since the Local Agreement expressly excludes damage claims from arbitration and the National Agreement does not deal specifically with the subject of damage claims. Local 215 answers with an assertion that this is not a situation where the specific provision in one contract controls in the absence of a specific provision in the other. Neither Bechtel nor the Union cites any authority for its position. We believe that the question whether provisions of two contracts are inconsistent can only be answered on a case-by-case basis; there is no litmus test for inconsistency by which these two contracts can be judged other than a test of common sense and plain meaning. *See Jersey Central, supra,* 508 F.2d at 703 & n. 10.

Two provisions are inconsistent where both cannot be operative at the same time. Common sense tells us that it is not possible to arbitrate "*all*" disputes while refusing to arbitrate damage claims. An exception to a general statement necessarily conflicts with an all-inclusive general statement admitting of no exceptions. We find that the arbitration articles of the Local and National Agreements are fundamentally inconsistent in that the former calls for two exceptions—jurisdictional disputes and damage claims—to the otherwise all-inclusive arbitration provisions while the latter establishes but one exception—jurisdictional disputes. The two contracts are further in conflict since each provides for its own superiority.

We are not persuaded by Bechtel's suggestion that we apply Article III of the Local Agreement, predicating such application on the rule of contract interpretation which holds that inconsistency within a contract may be resolved by giving effect to the specific provision rather than to the general language. That there is such a rule is not in doubt. *See, e. g., Capitol Bus Co. v. Blue Bird Coach Lines, Inc.,* 478 F.2d 556, 560 (3d Cir. 1973). The rule, however, is designed to aid a court in ascertaining the intent of the parties where the parties have expressed their agreement in a single contract. The parties are presumed to have intended the terms found in such a contract to be consistent one with the other and it becomes necessary to somehow resolve apparently inconsistent language within the perimeters of the agreement in order to give effect to the contract as a whole and, if possible, to all its provisions.

When the parties have agreed on two different dates to two separate contracts, however, the presumption that all of the provisions of both contracts are intended to

6. Of course, the parties may agree that the scope of the arbitration agreement will itself be determined by the arbitrator. *Cf. Desert Coca Cola Bottling Co. v. General Sales Drivers, Delivery Drivers and Helpers Local 14,* 335 F.2d 198 (9th Cir. 1964). Neither party suggests that there was such an agreement in the instant case.

be consistent is much less compelling. This is particularly so where, as in the case *sub judice*, the contracts on their face evidence an awareness that they may be inconsistent by providing that in cases of conflict the terms of one contract are to prevail over the terms of the other. Such a situation does not justify the application of a rule designed to resolve inadvertent inconsistencies found in a single contract. The inconsistency in these two agreements on the question of the arbitration of damage claims cannot be resolved by holding the specific language of one predominant over the general language of the other.

Having found that the relevant provisions of the two contracts are inconsistent, we adopt the rule stated in section 408 of the Restatement of Contracts (1932):

> A contract containing a term inconsistent with a term of an earlier contract between the same parties is interpreted as including an agreement to rescind the inconsistent term of the earlier contract.

*See also* 6 Corbin, Contracts § 1296 (1962). Applying that rule here, we hold that the provision in the National Agreement for arbitration of "all grievances and disputes, excluding jurisdictional disputes" prevails over the earlier inconsistent provision in the Local Agreement. It follows that the district court properly ordered the parties to submit their breach of contract dispute to arbitration.[6A]

III.

Although the district court did not expressly so order, the Memorandum Opinion makes clear that the parties were to submit the underlying issue of the Union's entitlement to the disputed work to the arbitrator together with the claim for damages. The court stayed the section 303 action partially in expectation that the arbitrator would render a decision on the jurisdictional dispute. The district court apparently thought that the question whether Local 215 was entitled to the work was logically antecedent to the question whether the Local was liable to Bechtel for breach of the collective bargaining agreement. Because we believe the district court misconceived the nature of the task which the arbitrator is to undertake in deciding Bechtel's claim to damages and also because of the clear language concerning jurisdictional disputes found in both agreements, we hold that the only proper forum for the resolution of the jurisdictional dispute is the National Joint Board for the Settlement of Jurisdictional Disputes in the Building and Construction Industry.

We first consider the terms of the two agreements. Under the parties' formulation for settlement of jurisdictional disputes in the construction industry, Article XII of the Local Agreement and Article XIV of the National Agreement provide that jurisdictional disputes were to be settled by the National Joint Board. Moreover, both agreements specifically exclude jurisdictional disputes from the reach of the arbitration provisions. (Local Agreement, Art. XII and National Agreement, Art. XV, *supra.*) The two agreements are not in conflict as to the jurisdictional dispute machinery and the intent of the parties is clear: jurisdictional disputes are to be handled specifically by the National Joint Board while certain other grievances and disputes are to be submitted to arbitration. In directing the parties to submit the jurisdictional dispute to arbitration, the district court inadvertently disregarded the clear intent of the parties not to utilize that forum for jurisdictional disputes.

6A. We are aware of the strong Congressional policy favoring arbitration of labor disputes, *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), but we do not think it necessary to invoke that policy in support of our result here. Our disposition of this issue is grounded on traditional rules of contract interpretation which we adopt as controlling law for the resolution of this dispute. *See Affiliated Food Distributors, Inc. v. Local 229*, 483 F.2d 418, 419 (3d Cir. 1973), *cert. denied*, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974). Resort to Congressional policy is appropriate only when efforts to discover the parties' intent prove inconclusive.

Our conclusion that the jurisdictional dispute is not arbitrable also is supported by other considerations. Just as it is the duty of the courts to enforce an agreement of labor and management to arbitrate certain disputes, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), the same policy considerations require that courts also respect an agreement between management and unions to submit jurisdictional disputes to the specific settlement agency designated by them for that purpose. Jurisdictional disputes usually involve controversies between trade unions competing for assignment of work with the employer caught in the middle. They are highly volatile, and ordinarily involve delicate questions of union policy and knowledge of union organizational commitments and industry problems. Moreover, such disputes more often than not are with unions not parties to the employer's collective bargaining agreement. The merits of such disputes are best left to the settlement machinery fashioned by the parties for the purpose. Article XIV of the National Agreement and Article XII of the Local Agreement unequivocally provide that jurisdictional disputes are to be submitted to the National Joint Board. This agency apparently has the necessary expertise, the confidence of the parties "and knowledge of the building and construction industry and its unique problems and solutions therefore which an arbitrator may not possess." *Local Union 1423 Glaziers v. P. P. G. Industries, Inc.*, 378 F.Supp. 991, 999 (N.D.Ind. 1974). Moreover, the National Joint Board may be able to bind the unions involved in the jurisdictional dispute who are not parties to the collective bargaining agreement with Bechtel, a power the arbitrator does not enjoy. *See Carey v. Westinghouse Corp.*, 375 U.S. 261, 265, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). The district court, therefore, should not have referred the jurisdictional dispute to the arbitrator.[7] *See Sheet Metal Workers International Union v. Aetna Steel Prod. Corp.*, 359 F.2d 1, 5 (1st Cir. 1966), *cert. denied*, 385 U.S. 839, 87 S.Ct. 86, 17 L.Ed.2d 72 (1966).

The district court's view that the arbitrator should decide the jurisdictional dispute was evidently influenced by its belief that the arbitrator, in deciding Bechtel's claim for damages, would necessarily first have to decide the jurisdictional dispute. We believe that the arbitrator need not undertake such a wide ranging inquiry.

It appears that under both the Local and National Agreements, Local 215 promised not to engage in any work stoppages for any reason. (Local Agreement, Art. XI and National Agreement, Arts XIV and XI, *supra.*) In the National Agreement, which is controlling in case of conflict for the reasons we have previously indicated, Local 215 expressly agreed not to conduct any work stoppages over jurisdictional disputes. Bechtel has alleged that the Union breached the agreement by conducting a work stoppage "because of a jurisdictional dispute" within the meaning of Article XIV of the National Agreement, and that Bechtel suffered damages as a result.

In our view, the arbitrator need answer only two major questions in deciding this claim: (1) Did Local 215 conduct a work stoppage and engage in picketing in violation of its promise? and (2) If so, how much damage did Bechtel suffer as a result? We do not foresee that the arbitrator will have to deal with the merits of the jurisdictional dispute at all.[8]

7. The same result follows if the question is approached from the opposite direction. Where the parties to a collective bargaining agreement have contracted not to submit a particular class of disputes to arbitration, the court has no right to order that they do so; a party's obligation to arbitrate a labor dispute arises only out of the party's promise to do so, never by operation of law. *Gateway Coal Co. v. United Mine Workers*, 414 U.S. 368, 374, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *Food Distributors, Inc. v. Local 229*, 483 F.2d 418, 419 (3d Cir. 1973), *cert. denied*, 415 U.S. 916, 94 S.Ct. 1412, 39 L.Ed.2d 470 (1974).

8. We do not intend to foreclose the arbitrator from considering whatever issues and evidence he deems relevant. This is not our function. *See Amalgamated Meat Cutters v. Cross Bros. Meat Packers, Inc.*, 518 F.2d 1113 (3d Cir.

## IV.

The district court stayed the section 303 action with the expectation that the arbitrator would decide the jurisdictional dispute and that such decision would prove useful in the court's disposition of the section 303 claim. The district court held that a finding by the arbitrator that the members of Local 215 were entitled to the work in dispute would operate as a defense for the union in the section 303 action against it.[9] We do not agree. We not only hold that the jurisdictional dispute is not arbitrable, but we also believe it is unnecessary to decide whether entitlement to the work in dispute is a defense to a section 303 action predicated on a violation of section 8(b)(4)(d).

We affirm the stay, however, for two reasons: first, because of the discretionary power inherent in a trial court to stay an action before it; and secondly, because the arbitrator's resolution of the section 301 action may obviate the need to pursue the section 303 action to trial.

 A United States district court has broad power to stay proceedings.

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.

*Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936) (Cardozo, J.). In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues. *Cf. American Life Ins. Co. v. Stewart,* 300 U.S. 203, 215, 57 S.Ct. 377, 81 L.Ed. 605 (1937).

That the court did not abuse its discretion by staying the section 303 action here is obvious from the nature of Bechtel's claims against the union. The two counts of Bechtel's complaint allege identical damages—$12,000 per day for each day of the alleged work stoppage. Although Bechtel has the right to prosecute its claim on both the contract theory (under section 301) and the tort theory (under section 303), Bechtel cannot recover damages more than once. If Bechtel should prevail in the arbitration of its section 301 claim for breach of contract and be awarded the damages it claims, Bechtel should have no further claim against the union under section 303. We do not know whether this will in fact occur but the possibility is sufficient justification to warrant the stay.

The order of the district court, except insofar as it refers the jurisdictional dispute to arbitration, will be affirmed.

9. The district court held that the Supreme Court's dictum to the contrary in *NLRB v. Radio Engineers, Local 1212,* 364 U.S. 573, 584, 81 S.Ct. 330, 5 L.Ed.2d 302 (1960), was not controlling.

1975). We discuss the scope of the arbitrator's inquiry only as it bears on the district court's understanding that the jurisdictional dispute should be decided by arbitration.