QUIVIRIAN DEVELOPMENT COMPA-
NY, Inc., a Corporation, Appellant,

v.

William T. POTEET and Ethel L. Poteet,
Appellees.

No. 15876.

United States Court of Appeals
Eighth Circuit.

July 22, 1959.

Paul Margolis, Jr., Kansas City, Mo. (Louis Kranitz, St. Joseph, Mo., and Granoff, Levy & Craig, Kansas City, Mo., with him on the brief) for appellant.

Walter A. Raymond, Kansas City, Mo. (Joseph K. Owens and Martin Anderson, Kansas City, Mo., with him on the brief), for appellees.

Before GARDNER, Chief Judge, and JOHNSEN and VOGEL, Circuit Judges.

JOHNSEN, Circuit Judge.

Appellant as vendee sued appellees as vendors to recover a $10,000 deposit made on a Missouri land contract. The jury returned a verdict for appellees, and the court denied appellant's motion for judgment notwithstanding the verdict and its alternative motion for a new trial.

The $10,000 was initially paid for an option on the property, running to September 1, 1955. Appellant on that date exercised the option. This, under the terms of the contract, converted the payment into a deposit on the purchase price. The $100,000 purchase price was to consist of cash in the amount of $21,000 and a note and mortgage on the property to the sellers for $79,000.

Upon exercise of the option, the contract called for the sellers to furnish the buyer with a preliminary title report, as to conveyances and encumbrances, from an accredited title insurance company, within 20 days. The buyer was allowed 10 days thereafter in which to make specification of such objèctions as it had to the title on the basis of this report. The sellers then had 30 days in which to clear up these objections and have any defects "rectified". "But in case such defects in the title cannot be rectified within that time, this contract shall be null and void and all monies paid to the Sellers by the Buyer * * * shall be returned to the Buyer".

The contract further provided: "If title be good, the Sellers shall deliver * * * their warranty deed properly executed and conveying said property free and clear from all liens and encumbrances * * *". "If the Sellers have kept their part of this contract by furnishing good title as herein provided and have complied with all the other provisions above set out, and Buyer fails to comply with the requirements within 10 days thereafter, then the money deposited * * * shall be forfeited by the Buyer as liquidated damages and this contract shall terminate and be held for naught".

Appellees furnished appellant with a preliminary title report on the property from a Kansas City title insurance company, on September 8, 1955. The report showed that there had been three conveyances made of portions of the property to the State of Missouri for highway purposes. The nature and extent of the grants were not set out in the report, except that it was noted that the third of these conveyances contained also "a relinquishment of abutter's rights of direct access between abutting property and highway except at points therein designated".

The report further showed the existence of three easement grants to Kansas City Power & Light Co., for powerline purposes, with a number of general collateral privileges. There was enumeration too of the facts that the 1955 taxes on the property were unpaid, and that there existed an unreleased deed of trust in the face amount of $20,000.

Appellant, within the 10-day period allowed by the contract for that purpose, made specification of all of these items as title defects or matters necessary to be cleared up in order to provide good record title.

The position of appellant on the trial was that it was not particularly concerned about the unpaid taxes and the outstanding deed of trust being precedingly taken care of, since it would have been able, in view of the cash for which the contract called, to deal with these incidents protectively at the time of the closing of the transaction. As to the highway conveyances, however, and the relinquishment of access rights to and from the property involved in one of them, as well as to the existing grants of power-line easements, appellant stated that it regarded these as on their face having material relation to and possible effect upon its intended object of platting the property into lots.

In its letter to appellees of September 16, 1955, setting out the title objections, appellant declared as to the highway conveyances and the relinquishment of access rights: "Before we can determine whether or not the conveyances affect the marketability of the land involved herein, or whether it reduces the amount of the acreage, it would be necessary for us to be furnished with copies, of said deeds of conveyances, and it might further be necessary to make a survey of the premises in order to determine that the tract conveyed will include the amount of acreage provided for in the contract, free and clear of all encumbrances over and above the amount of property conveyed to the state of Missouri * * *".

Regarding the power-line easements, the letter requested that copies of these grants be furnished to appellant for examination. The comment was added that some of the easement rights, on the indications made by the title report, might perhaps "interfere with the opportunity to properly develop the land in question, and it may be necessary to obtain a modification of said easements in order for you to make proper conveyances of the land in question under the terms of the contract herein".

On October 10, 1955, which was within the 30 days fixed by the contract for clearing up the title objections and defects, appellees sent appellant a letter of general statement, as follows: "This will notify you that we have made arrangements to comply with all the terms of your * * * letter of September 16, 1955 affecting the title * * *." The letter went on, however, to impose this

condition: "Unless we are notified that you are ready to carry out your part of this agreement on or before Monday, October 17, 1955, we will take it that you do not intend to carry out your part of this contract".

On October 17, 1955, appellant's attorney wrote and delivered to appellees a communication stating: "I cannot tell from the general language of your letter of October 10, 1955, what correction, if any, you have made or are able to make in your land title as suggested in my title opinion letter of September 16. Before we can intelligently answer your October 10 letter, we would appreciate a reply to the various matters contained in my letter of September 16, 1955 * * *".

The parties apparently thereafter engaged in no further conference or correspondence relative to closing the matter. Finally, on December 20, 1955, appellant's attorney sent appellees this letter: "I have given careful consideration to the matter of your contract * * * and have come to the definite conclusion that you are in default and in violation of the terms thereof and I shall expect receipt of the check in the sum of $10,000 covering a refund of the money deposited with you with the contract, or my client will hold you fully accountable at law for the repayment thereof".

Appellees made no reply to this letter, and the suit here involved was subsequently commenced by appellant to recover the $10,000 deposit. The defense interposed by appellees amounted in effect to a charge that appellant had on October 15, 1955 refused to perform and thus had made a total repudiation of the contract, and that the deposit had accordingly become forfeited to appellees as liquidated damages.

There was testimony by appellees and their attorney on the trial that the three of them had on October 15th gone to the office of the attorney for appellant and had tendered him a warranty deed to the property, with an offer in conjunction therewith to exhibit to him a payment receipt for the 1955 taxes, a release of the outstanding deed of trust, and a letter from the Kansas City Power & Light Co. expressing a willingness to release its power-line easements. They did not, however, claim that they had any instruments with them with which to clear up the objections as to the highway conveyances; nor did they undertake to give any information as to the scope of these grants or as to the nature of the access rights relinquished thereunder—which the title insurance company's report had shown as representing limitations or encumbrances on the record title.

Appellees and their attorney further testified that appellant's lawyer kept declaring through the course of the October 15th meeting that he was not interested in the deed or the title—"All I want is an extension, that is what I would like to have is an extension". They claimed that they offered to grant an extension, but only upon payment to them of an additional $1500 consideration, together with the accumulated interest on the contract price. Their attorney added the statement in his testimony that "we left the office with the idea that he (appellant's attorney) would let us know". He said too that appellant's attorney had theretofore approached him about obtaining an extension, declaring that appellant was currently tied up on some other property and did not have the cash available to complete the deal. He sought to emphasize that at no time had appellant's attorney ever made any comment or complaint to him on the title situation, except, of course, in his September 16th and October 17th letters.

Appellant's attorney testified controvertingly that there had been no meeting at his office on October 15th, such as appellees and their attorney had stated. He said that there had been a conference previously, held at his solicitation, at which he had sought to obtain an extension. But, according to his testimony, neither at that meeting nor at any other time had appellees ever tendered a deed to him; appellees had never indicated to him how they proposed to clear up his objections to the highway grants, access

relinquishment, and power-line easements; and he had at no time said to them that he was not interested in or concerned about the title to the property or the objections which he had made thereto.

The trial judge ruled as a matter of law that the objections specified in the September 16th letter of appellant's attorney were, as related to the title report which appellees had furnished, material and valid objections to the title contracted to be furnished by appellees; that failure of appellees to clear up these various matters or to provide the information requested by appellant as to them would have warranted appellant in refusing to go through with the deal; and that, even on the evidence produced by appellees at the trial, they had not shown —at least as to the highway conveyances and the access relinquishment—that they ever were in a position to have furnished such title to the property as was called for by the contract.

The court refused, however, to direct a verdict for appellant on this basis, in accordance with appellant's motion. It was of the opinion that the evidence was sufficient to entitle the jury to pass on whether appellant had "waived" the title defects. It accordingly submitted that question to the jury, under instructions to the effect that, if appellant had refused to perform or complete the deal "for any reason except the title", then it was not entitled to recover the $10,000 deposit.

The difficulty with this concept or theory is that the most that appellees' evidence could legally be viewed as involving would be an anticipatory repudiation of the contract, and that, insofar as appellees' right to treat this as a breach was concerned, the repudiation would have to be regarded as being revoked by appellant's letter of October 17th, giving renewed recognition to and making reassertion of the obligations of the contract.

If appellant's attorney, as contended by appellees, stated on October 15th, or at some previous time, in express terms

or unequivocal effect, that appellant would not go through with the deal unless appellees granted it an extension, this could be capable of being treated as a total repudiation. But it would represent a repudiation made before performance by appellant was due and so would be entitled to be withdrawn or revoked up to the time fixed by the contract for such performance, unless appellees in the meantime had relyingly engaged in changing their situation or had justiciably asserted the right to claim anticipatory breach and immediate damages by the institution of a suit.

Appellees' letter of October 10th recognized the legitimacy of the title objections and requests contained in appellant's letter of September 16th, by its statement that "we have made arrangements to comply with all the terms of your * * * letter". Without indication or offer to demonstrate how all this had been or was going to be done, appellees' letter undertook to demand that appellant notify them by October 17th that it was ready to carry out its part of the agreement. Paragraph 11, however, of the contract, set out above, gave appellant 10 days in which "to comply with the requirements", after "the Sellers have kept their part of the contract", before there could occur any forfeiture of the deposit in liquidated damages.

As the trial court declared, appellees had not, in their claimed attempt on October 15th to make appellant's obligation become operative pursuant to the contract, met or demonstrated that they would be able to meet the requirement of the contract for furnishing good record title, in relation to the highway conveyances and the access relinquishment at least. Thus, so far as the terms of the contract were concerned, the time for performance of appellant's obligation had not been caused to arrive or become fixed. But assuming arguendo that the tender and proffer claimed by appellees to have been made on October 15th were sufficient to fix appellant's obligation on the basis of the contract, appellant would be entitled under the agreement to 10

days thereafter, or until October 25th, in which "to comply with the requirements" on its part, except as it might see fit to waive that right by engaging in a repudiation. Again, if appellant could be regarded as having engaged in such a repudiation on October 15th, it still would be privileged to make withdrawal or revocation of the repudiation before October 25th, unless, as we have stated, appellees had in the meantime relyingly changed their situation or had justiciably asserted the right to claim anticipatory breach and immediate damages by the institution of a suit.

Here, appellant's letter of October 17th, giving renewed recognition and making reassertion of the obligations of the contract, would constitute a withdrawal or revocation, unless appellant was precluded, on the basis indicated above, from escaping the repudiation as a matter of estoppel. But there was no evidence of appellees' situation having in any way been changed between October 15th and October 17th, so as to give rise to an estoppel from fact. Nor did they during that time institute any legal action asserting and asking to have established or declared their right to immediate damages, so as to effect an estoppel by law.

We are accordingly of the opinion that, as the record stood, the trial court erred in allowing the case to be submitted to the jury.

The principles which compel this result are well settled, and only a few of the authorities supportive of them need be set out.

■ Preliminarily, it should be noted that the situation is not one of rescission on the part of appellees in relation to the alleged repudiation. If appellees had wanted to use the repudiation to make rescission, they would have been required to make return of the $10,000 deposit.

■ Further, it must be borne in mind that, while the action is in form one on the part of appellant to recover the deposit, appellees are in effect seeking to make it serve to have recognized their right to damages as of the date of the alleged repudiation, the same as if they had justiciably asserted that right by the institution of a suit prior to appellant's withdrawal or revocation of the repudiation. The fact, however, that the contract made provision for a forfeiture of the $10,000 deposit as liquidated damages, if appellant failed "to comply with the requirements" against it, would not in our opinion have any effect upon the right of appellant to make retraction of an anticipatory repudiation in which it might engage, up to the date fixed by the contract for performance by it, except as an estoppel could come to exist against it under the rule above set out.

■ That rule, as has been indicated, permits an estoppel to be created on the basis of fact or of law. It would exist from fact, if appellees, prior to appellant's withdrawal or revocation of the repudiation had relyingly changed their circumstantial situation. It would exist from law, if they had before withdrawal of the repudiation justiciably asserted the right to claim anticipatory breach and immediate damages.

■ The institution of a suit before retraction of an anticipatory repudiation has occurred serves the purpose, of course, in a situation where liquidated damages are not provided for, of not merely effecting a justiciable assertion of the right to claim anticipatory breach and immediate damages, but of having the amount of those damages established as well. It is, however, we think, the status created from a justiciable assertion being made of the right to claim anticipatory breach and immediate damages, and not the matter alone of resolving the amount of those damages, on which the existence of the estoppel by law against an anticipatory repudiation being retracted depends.

■ The significance of this in relation to the present situation is that, in order to have estopped appellant by law from making withdrawal of its repudiation, appellees would have had to insti-

tute some form of suit, making assertion of their right to claim anticipatory breach and immediate damages and seeking to have that right judicially recognized. A suit for a declaratory judgment would have served that purpose.

■ No justiciable assertion would, of course, be necessary to entitle appellees to retain the deposit in liquidated damages for ordinary breach. But to enable them to have the benefit of an estoppel by law against a retraction being made of an anticipatory breach, such an assertion was necessary.

Getting down to the authorities, an examination of the decisions clearly impresses that the courts have been conservative in their expressions and appraisals of alleged anticipatory repudiations and liberal in their recognition of locus poenitentiae as to such repudiations. A few quotations will serve to illustrate.

"It is invariably stated in the decisions that in order to give rise to an anticipatory breach of contract the defendant's refusal to perform must have been positive and unconditional." 5 Williston on Contracts, Rev.Ed., § 1334. "The law seems to be settled that a refusal to fulfill a contract must be absolute * * *; such a refusal must be in no way qualified, and should substantially amount to an avowed determination of the party not to abide by the contract." Hoggson Bros. v. First Nat. Bank of Roswell, 8 Cir., 231 F. 869, 872. "An anticipatory breach of contract is not established by a negative attitude or one which indicates more negotiations are sought or that the party may finally perform". Palmiero v. Spada Distributing Co., 9 Cir., 217 F.2d 561, 565. (Because of the result which we have otherwise reached, we here pass without comment the testimony of appellees' attorney that "we left the office with the idea that he would let us know".) "The law is * * * clear * * * that the breach (by anticipatory repudiation) may be nullified, if neither an action has been brought upon it nor any change of position taken place. * * * If, however, the contract

has been totally rescinded, or an action has been brought, or the injured party has otherwise changed his position, such withdrawal is ineffectual." 5 Williston on Contracts, Rev. Ed., § 1335.

■ The principles applicable to anticipatory repudiation and breach are set out in simple form in the Restatement Except as the Restatement recognizes an anticipatory repudiation as itself constituting a total breach, while most of the decisions make the question of breach one for election on the part of the promisee, the principles as set out in the Restatement have come to be of general acceptance. An anticipatory repudiation is declared to exist when a promisor, not otherwise in default, engages in making, without justification, "a positive statement to the promisee or other person having a right under the contract, indicating that the promisor will not or cannot substantially perform his contractual duties". Restatement, Contracts, § 318. "He [however] has power to nullify his manifestation of unwillingness or inability by retracting it, so long as the party, in reliance thereon, has not changed his position." Id., § 306. "The effect of repudiation is nullified * * * where statements constituting such repudiation are withdrawn by information to that effect given by the repudiator to the injured party before he has brought an action on the breach or has otherwise materially changed his position in reliance on them * * *." Id., § 319(a).

■ One who makes justiciable assertion of his right to claim anticipatory breach and immediate damages is not required to make an offer to perform or to show his ability to do so. Restatement, Contracts, § 306, Comment a; Wayland v. Western Life Indemnity Co., 166 Mo.App. 221, 148 S.W. 626, 629; Claes & Lehenbeuter Mfg. Co. v. McCord, 65 Mo.App. 507, 509. But this has reference only to a failure to perform conditions induced by the repudiation. The constructive tender which the law regards as existing as to the performance of such conditions has no application to an inability otherwise on the part of the

promisee to have made performance of his obligation. Thus, the promisor is entitled to show in defense that the contract is one which the promisee never could have performed. In the language of the Restatement, "if the condition could not or would not have been performed had there been no repudiation of the promise, the promisor is not precluded from asserting the requirement of the condition". Id., § 306, Comment a.

In general example, one who had entered into a contract to sell a piece of property, which it could be shown that it would have been utterly impossible for him ever to acquire and deliver the title to, but as to which the purchaser, without knowledge of this fact at the time, had engaged in an anticipatory repudiation, would hardly be allowed to recover damages for anticipatory breach on the theory that the repudiation had excused him from any such or other inability to perform his contract obligation. And in the present situation, appellees would not at all have a right to liquidated damages, if it could be shown that their title was not and never legally could have been made to become such as they had agreed to deliver under their contract.

Within such occasion as the Missouri courts have had to consider and make expression on the subject of anticipatory repudiation and breach, there is no basis to contend or believe that the generally accepted principles which we have set out would not be held by the Missouri courts to represent the Missouri law. We feel certain that they would.

We have indicated that as the record stood the trial court was in error in submitting the case to the jury and that appellant's motion for a directed verdict was entitled to be sustained. We are impressed, however, that the facts have perhaps not been fully developed in relation to the theory and principles which we have discussed. Some other concepts were collaterally permitted to enter into the proceedings. Under the circumstances, we think it desirable to exercise our discretion to leave the situation open to further development by the parties and simply remand the case for a new trial. Cf. Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 254, 61 S.Ct. 189, 85 L.Ed. 147.

Reversed and remanded for new trial.