The OHIO ENVIRONMENTAL
COUNCIL, Petitioner,

v.

UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF OHIO,
EASTERN DIVISION, and Columbus
and Southern Ohio Electric Company,
Respondents.

No. 76–2581.

United States Court of Appeals,
Sixth Circuit.

Argued April 7, 1977.

Decided Nov. 4, 1977.

A. Mark Segreti, Jr., Segreti & Tousey, Columbus, Ohio, for petitioner.

A. G. Green, President and Chairman of Board of Directors, Columbus and Southern Ohio Elec. Co., Columbus, Ohio, J. Jeffrey McNealey, Porter, Stanley, Platt & Arthur, Columbus, Ohio, for respondents.

Before CELEBREZZE, PECK and ENGEL, Circuit Judges.

JOHN W. PECK, Circuit Judge.

The Ohio Environmental Council has petitioned this Court to issue a writ of mandamus directing the District Court to enter a judgment ordering Columbus & Southern Ohio Electric Company to comply with the fuel boiler emission limitations in Ohio's plan for implementation of national ambient air standards under the Clean Air Act, 42 U.S.C. § 1857 *et seq.*\* The District Court entered a stay of Clean Air Act enforcement proceedings initiated by the OEC against C&SOE, until C&SOE has had an opportunity to contest the Environmental Protection Agency's approval of the plan.

---

\* The Clean Air Act which was formerly 42 U.S.C. § 1857 *et seq.* is in the process of being recodified as 42 U.S.C. § 7401 *et seq.* There is nothing in the 1977 Amendments to alter our conclusion herein.

The factual background of this case is complicated, but some detail is required for an understanding of the issues involved. In 1970, extensive amendments to the Clean Air Act were passed. The operation of the regulatory scheme is discussed at length in *Train v. Nat'l Resources Def. Council*, 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975), but in brief, each state was required to formulate, subject to EPA approval, a State Implementation Plan (SIP) designed to achieve national primary ambient air quality standards "as expeditiously as practicable but in no case later than three years from the date of approval of such plan." Clean Air Act § 110(a)(2)(A), 42 U.S.C. § 1857c–5(a)(2)(A).

The Amendments provide for judicial review of the EPA's approval of a plan for a state within the circuit in the United States Court of Appeals, if a petition for review is filed within thirty days of the EPA's action. Sec. 307(b)(1), 42 U.S.C. § 1857h–5(b)(1). This concern for speedy review and implementation of an SIP is reflected in Section 307(b)(2), clearly aimed at preventing delay in enforcement. It provides that any action taken by the EPA which could have been reviewed in a Section 307(b)(1) proceeding "shall not be subject to judicial review in civil or criminal proceedings for enforcement." 42 U.S.C. § 1857h–5(b)(2).

The Ohio SIP was originally submitted to the EPA for approval on January 30, 1972, and was approved on May 31, 1972. A year later, this Court remanded the Ohio SIP to the EPA for informal rulemaking procedures. *Buckeye Power Inc. v. EPA*, 481 F.2d 162 (6th Cir. 1973) (*Buckeye I*). The EPA reapproved the plan in 1974. At that time, the plan's deadline for achieving the emission limitations was July 1, 1975, but extensive modifications of the plan, including an extension of the deadline to April 15, 1977, were submitted to the EPA for approval on July 16, 1975.

This enforcement suit was filed October 16, 1975, pursuant to the Citizen Suit Provisions of Section 304, 42 U.S.C. § 1857h–2, which grants the district courts jurisdiction to enforce the requirements of approved plans. OEC sought to enforce the emission standards of the original plan against C&SOE which would essentially have meant the shutdown of three C&SOE boilers. The next day, a second revision was submitted for approval to the EPA. Approval of this second revision would apparently moot this law suit, since it would exempt the two C&SOE boilers which are still not in compliance with the standards.

Meanwhile, steel and utility companies (including the defendant in this case) were again seeking judicial review of the original plan in this Court. On October 23, 1975, in *Buckeye Power, Inc. v. EPA*, 525 F.2d 80 (6th Cir. 1975) (*Buckeye II*), this Court held that the controversies raised by the petitioners were not yet ripe for judicial review. Since the plan was in the process of major revision, this Court could "perceive no immediate harm to petitioners in allowing the environmental protection administrative processes to arrive at definitive administrative conclusions on these disputed issues." 525 F.2d at 84.

Eleven months later, on September 26, 1976, the EPA finally approved the first revision proposal. The second proposal, dealing specifically with the boilers involved in this suit, was not approved, and was eventually returned to the state as inadequate.

On December 1, 1976, the District Court entered a stay of the enforcement proceedings "pending the further order of this Court." The Court held "that 42 U.S.C. § 1857h–5(b) vests exclusive jurisdiction in the Court of Appeals concerning judicial review of the Administrator's action in approving the SIP, and further that enforcement proceedings cannot be had against defendants under that SIP until it has had an opportunity to contest the Administrator's approval of the plan." The Court reasoned that since review of the plan had been denied the defendant in *Buckeye II*, the plan could not be enforced. This petition for a writ of mandamus ordering the District Court to enforce the plan was promptly filed. On April 15, 1977, the deadline for attainment of the standards

passed, and C&SOE is admittedly not in compliance with the requirements of the plan.

This Court can perceive no reason for delay in the enforcement of Ohio's emission limitations. There is no dispute that Ohio has an "applicable implementation plan," as defined in § 110(d) of the Clean Air Act, and that the Citizen Suit Provisions of § 304 grant jurisdiction to the district courts to enforce such plans. Since *Buckeye II* did not remand the Ohio SIP or disapprove it in any way, the sole issue involved here is the propriety of the stay of enforcement issued by the District Court.

We note at the outset that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel and for litigants," *Landis v. North American Company*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936), and that the entry of such an order ordinarily rests with the sound discretion of the District Court. We see nothing in the Clean Air Act to alter these basic principles, and reject plaintiff's argument that the District Court is stripped of this fundamental power in the context of an enforcement proceeding simply because its jurisdiction is limited by Section 307(b)(2). *Cf., Scripps-Howard Radio v. FCC*, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942) (Courts of Appeals retain power to order stay during review of FCC determinations).

Given this, however, it is also clear that a court must tread carefully in granting a stay of proceedings, since a party has a right to a determination of its rights and liabilities without undue delay. In *Landis v. North American Company, supra*, the Supreme Court set out guidelines for a court to consider in granting stays. In a suit brought by two holding companies seeking to restrain enforcement of the Holding Company Act, the District Court had entered an order staying all proceedings until the conclusion of the trial and appeal of a similar challenge in another court. The Supreme Court held that such an order constituted a clear abuse of discretion. First, it pointed out:

> The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

299 U.S. at 255, 57 S.Ct. at 166. Thus the burden is on the party seeking the stay to show that there is pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order. A court should be particularly hesitant when, as here, the stay will disrupt a statutory or administrative timetable. Furthermore, even if the reasons for the stay are proper, the stay itself "is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description." 299 U.S. at 257, 57 S.Ct. at 167. *See also, Dellinger v. Mitchell*, 143 U.S.App.D.C. 60, 442 F.2d 782 (D.C.Cir.1971).

Measured by these standards, we reluctantly conclude that the District Court has clearly abused its discretion in entering the present order. With no safeguards for the health of the public, and in spite of the fact that the final deadline for compliance has passed, the District Court has entered an order which could place this case in limbo for years. The cause has already been delayed for more than a year and a half by successive stays.

On the other hand, C&SOE has failed to demonstrate how prompt enforcement would harm it in any way other than the burden it must bear in meeting its responsibility under the Ohio SIP. Both the District Court and C&SOE relied on the argument that the defendant is entitled to judicial review of the emission limitations contained in the SIP. However, the burden is wholly on the defendant to seek judicial review if it has an objection to the proprie-

ty of the EPA's action in approving the Ohio SIP, and the review provided for in Section 307(b)(1) is completely independent of any enforcement proceeding. If C&SOE has failed to seek review prior to enforcement, it has no right to claim that it has been denied review, although the District Court is correct in concluding that it is without jurisdiction to review any action of the EPA which could have been challenged in a 307(b)(1) proceeding in this Court. Section 307(b)(2), 42 U.S.C. § 1857h–5(b)(2); *see United States v. Adamo Wrecking Company*, 545 F.2d 1 (6th Cir. 1976), *cert. granted*, 430 U.S. 953, 97 S.Ct. 1596, 51 L.Ed.2d 802 (1977). We decline to reach defendant's arguments that enforcement would unconstitutionally deny it a due process hearing, for even if a Section 307(b)(1) hearing were unavailable in the existing circumstances, there has been no showing that defendant had no other opportunity to voice its objections to the emission limitations involved here. *See Section* 110(a)(1), 42 U.S.C. § 1857c–5(a)(1) (notice and hearing required in formulation of state plan); Ohio Rev. Code Ann. § 3745.04 (appeals to Environmental Board of Review).

The Supreme Court added reinforcement to this view of the proper balance between district court enforcement and Court of Appeals review in *Train v. Nat'l Resources Def. Council, supra*, 421 U.S. 60, 95 S.Ct. 1470, 43 L.Ed.2d 731. In that case, the Supreme Court pointed out that if a polluter is dissatisfied with an emission limitation,

> . . . the polluter is presumably within his rights in seeking judicial review. This litigation, however, is carried out on the polluter's time, not the public's, for during its pendency the original regulations remain in effect, and the polluter's failure to comply may subject him to a variety of enforcement procedures.

421 U.S. at 92, 95 S.Ct. at 1488. The Court is plainly suggesting that given the strong Congressional policy in favor of prompt enforcement of the Act, ordinarily enforcement should not be delayed while review of the EPA's action is under way, and certainly should not be delayed because of the possibility that sometime in the future there might be a review proceeding.

■ C&SOE may protest that it attempted to seek review of the limitations "on its own time," but was rebuffed by this Court, see *Buckeye II, supra*, and that now it is unfair to enforce those same standards against it without review. That argument ignores the fact that an unripe controversy eventually matures, and that a determination of unripeness early in a controversy cannot indefinitely bar enforcement. C&SOE should properly address its arguments to this Court in the context of a review proceeding, and if the defendants are able to make a clear showing of potential harm, and raise a substantial question as to the propriety of the EPA's action, presumably this Court is fully capable of fashioning an equitable solution to the problem. *See, Scripps-Howard Radio v. FCC, supra*, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229. It is undeniable that the procedures for review and enforcement have not worked smoothly in this case, but that is no reason for abandoning the process altogether for an indefinite period of time.

■ The District Court implies in its opinion granting the stay that it believes that under *Buckeye II*, not only is the present controversy still not ripe for review, but that standards which are not ripe for review cannot be enforced. In the first place, we wish to point out that ripeness decisions are very much the product of a particular set of circumstances at a particular time. Not only have two years passed since *Buckeye II* was decided, but the major revisions which were pending in that case have since been approved by the EPA, and the final attainment date for emission limitations has come and gone. Furthermore, enforcement is not necessarily affected by ripeness for review. In fact, imminent enforcement is a crucial factor which renders standards reviewable.

Going beyond the factors relied on by the District Court, C&SOE urges that the plan is still in the process of revision, and that this justifies the Court's refusal to enforce the regulations now. This argument would potentially render any plan unenforceable

at any time, since the Act clearly envisions the possibility of continuous adjustments in the basic plan by the State and the EPA. Section 110(a)(2)(H), (3)(A); 42 U.S.C. § 1857c–5(a)(2)(H), (3)(A). If a plan became unenforceable every time such a revision became a possibility, the entire enforcement procedure of the Clean Air Act would be crippled. The Supreme Court has rejected the argument, pointing out that "[A] polluter is *subject to existing requirements* until such time as he obtains a variance, and variances are not available under the revision authority until they have been approved by both the State and the Agency." *Train v. Nat'l Resources Def. Council,* *supra,* 421 U.S. at 92, 95 S.Ct. at 1488 (emphasis added). *See also, Friends of the Earth v. Carey,* 535 F.2d 165 (2d Cir. 1976); *Friends of the Earth v. PEPCO,* 419 F.Supp. 528 (D.D.C.1976). In any case, whatever the justification for a brief stay in the context of apparent imminent administrative action which would potentially moot the entire controversy, *cf., Buckeye II,* 525 F.2d 80, the current stay is clearly not justified on that basis. The delay since the initiation of this suit has been far from brief, the final attainment date passed months ago, and the EPA, far from being on the verge of approving a variance, has in fact returned the variance to the state as inadequate.

Defendant urges that the use of the extraordinary remedy of mandamus is improper in these circumstances. We agree with the familiar litany that mandamus is a drastic remedy which should be sparingly exercised, but no other way to break the deadlock in which the District Court has placed the plaintiff is apparent. The use of mandamus to review the propriety of a stay of proceeding is well-established, *Filtrol Corp. v. Kelleher,* 467 F.2d 242 (9th Cir.), *cert. denied,* 409 U.S. 1110, 93 S.Ct. 914, 34 L.Ed.2d 691 (1972), and the Second Circuit has recently utilized the writ to order enforcement of an SIP. *Friends of the Earth v. Duffy,* 552 F.2d 25 (2d Cir. 1977).

The defendant argues that mandamus is not a substitute for appeal, and thus cannot be utilized when 28 U.S.C. § 1292(b) (certification of interlocutory orders) pro-

vides a potential remedy. That argument is irrelevant here, since the basis of the order issued today is the District Court's abuse of discretion, rather than mistake of law. Since there is no controlling question of law, a request for a § 1292(b) certification would be a pointless formality. In any case, it appears clear that the District Court would have refused to certify his order, as he in fact subsequently did.

We agree with defendant C&SOE, however, that the scope of the writ requested by OEC is too broad. OEC has requested a writ "ordering the District Court to proceed to enforce the Clean Air Act of 1970 by issuing an injunction against C&SOE prohibiting it from this date forward from emitting particulate pollution from boilers at Picway Generating Station in excess of the emission limitations AP–3–11 and AP–3–07." This request exceeds the proper scope of mandamus, which should not be used to actually control the decision of the trial judge. *Platt v. Minnesota Mining & Manufacturing Co.,* 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964).

We direct that the District Court proceed with this case as expeditiously as possible fully confident that he is capable of fashioning an appropriate remedy pursuant to the dictates of the law, and in accordance with this opinion.