Inocencio Fernando CASTANHO

v.

JACKSON MARINE, INC., Jackson Marine, S.A., and Jackson Marine Services, N.V.

Civ. A. No. B–79–437–CA.

United States District Court, E. D. Texas, Beaumont Division.

Feb. 14, 1980.

Robert A. Chaffin, Friedman & Chaffin and Benton Musslewhite, Houston, Tex., Joe H. Tonahill, Jasper, Tex., for plaintiff.

Eugene J. Silva, Vinson & Elkins, Houston, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

JOE J. FISHER, Chief Judge.

The Defendants in this action, Jackson Marine, Inc., Jackson Marine, S.A., and Jackson Marine Services, N.V. have moved in this Court for an order granting a rehearing of their motion to dismiss, for a stay, and to compel the attorneys representing the Plaintiff to prove their authority. In the alternative, the Defendants have asked this Court to certify its order of 14 December 1979, denying the motion for a stay and its order of 8 January 1980, denying the motion to dismiss and the motion to compel the attorneys representing the Plaintiff to prove their authority, as appealable interlocutory orders. See 28 U.S.C. § 1292(b).

### I

After having reviewed the ample briefs filed by the parties and having noted that two oral hearings have already been held on these motions, the Court concludes that the Defendants were given a full and fair hearing on their motion and that ab-

sent a showing of changed circumstances an additional hearing would be repetitive. Accordingly, as the Defendants have been unable to demonstrate the necessity of a rehearing at this time, the motion of the Defendants for a rehearing is DENIED.

## II

■ Under section 1292(b) of the Judicial Code a district judge may certify for appeal an "order not otherwise appealable" to the United States court of appeals when the order

(1) "involves a controlling question of law";

(2) "as to which there is substantial ground for difference of opinion"; *and*

(3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation."

28 U.S.C. § 1292(b).

. On its face, each ground of the Defendants' motion, other than the prayer for a stay and the prayer to compel the Plaintiff's attorneys to prove their authority, involves a controlling question of law since a decision of this Court to grant relief would result in the dismissal of two or more of the Defendants from this action. 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *Federal Practice and Procedure* § 3930, at 159 (1977). Further, for the same reasons, it cannot be disputed that an immediate appeal would not materially advance the ultimate termination of the litigation. *Id.* § 3930, at 163. But see *id.* § 3930, at 163–68.

Nevertheless, because this Court believes that none of the issues raised by the Defendants in their motion is capable of being classified as one in which a "substantial ground for difference of opinion" exists, and that one of the statutory requirements, see 28 U.S.C. § 1292(b), has therefore not been fulfilled, that much of the Defendants' motion which seeks this Court to certify its earlier orders for interlocutory appellate review is DENIED.

## A

In their initial motion, the Defendants asked this Court for an order:

1) dismissing the action on the ground that the Plaintiff's complaint fails to state a claim against the Defendants upon which relief can be granted;

2) dismissing the action on the ground that this Court lacks jurisdiction over the subject matter of the litigation;

3) dismissing the action on the ground that venue has been improperly laid in the Eastern District of Texas;

4) dismissing the action on the ground that the complaint avers facts which disclose that the forum chosen by the Plaintiff is not convenient for a trial upon the merits (forum non conveniens);

5) dismissing the action against Jackson Marine, S.A. and Jackson Marine Services, N.V. or, in the alternative, to quash the return of service of summons on the grounds that:

a) these Defendants are not residents of the State of Texas and are not subject to service of process within the Eastern District of Texas; and that

b) these Defendants have not been properly served with process in this action;

6) dismissing the action against Jackson Marine, S.A. and Jackson Marine Services, N.V. on the ground that this Court lacks jurisdiction over their person;

7) staying the jurisdiction of this Court pending the outcome of an action filed by the Plaintiff in the High Court of Justice, Queen's Bench Division, in London, England; and

8) compelling the attorneys representing the Plaintiff to prove their authority to represent the Plaintiff in this action.

Grounds "2" (lack of jurisdiction over the subject matter), "4" (forum non conveniens), and "6" (lack of jurisdiction over the person of Defendants Jackson Marine, S.A. and Jackson Marine Services, N.V.) merit brief discussion by the Court. The issues of subject matter jurisdiction and forum non conveniens are interrelated, see G. Gilmore

& C. Black, *The Law of Admiralty* § 6–64 (2d ed. 1975), and will be discussed together. Whether the Defendants are entitled to a stay of this action pending the outcome of similar litigation in the United Kingdom was discussed in a memorandum opinion of 14 December 1979 and will not be discussed further except as it is related to the issue of forum non conveniens.[1] The remaining grounds urged by the Defendants are clearly frivolous in light of the facts of this case and existing law and will not be discussed.

**B**

Two of the Defendants, Jackson Marine, S.A. and Jackson Marine Services, N.V., contend that the exercise by this Court of personal jurisdiction over them is either offensive to the established standards of Constitutional due process, see 4 C. Wright and A. Miller, *Federal Practice and Procedure* §§ 1064–1069 (1969), or precluded by the wording and interpretation of the Texas long-arm statute, Tex.Rev.Civ.Stat.Ann. art. 2031b (Vernon 1964 & Supp. 1980). In essence, they argue that Jackson Marine Services, N.V., the corporation which actually managed and controlled the affairs of the vessel at the time the accident occurred, has no office or place of business in the United States and is incorporated pursuant to the laws of the Netherlands Antilles; that Jackson Marine, S.A., the parent of Jackson Marine Services, N.V., is incorporated pursuant to the laws of Panama and has no office or place of business in this country; and that what contacts these Defendants have to Texas bear no relationship to the Plaintiff's cause of action.

At the outset, it is important to delineate what the resolution of this issue does *not* involve. As article 2031b, the Texas long-arm statute, has been authoritatively construed to extend the *in personam* jurisdiction of the Texas courts to the Constitutional maximum, *U-Anchor Advertising, Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977); see *Great Western United Corp. v. Kidwell*, 577 F.2d 1256, 1266 (5th Cir. 1978), *rev'd on other grounds sub nom. Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *Docutel Corp. v. S.A. Matra*, 464 F.Supp. 1209, 1217 (N.D.Tex.1979); *Western Desert, Inc. v. Chase Resources Corp.*, 460 F.Supp. 63, 64 (N.D.Tex.1978); *Motiograph, Inc. v. Check-Out Systems, Inc.*, 573 S.W.2d 606, 607 (Tex. Civ.App.—Eastland 1978) (writ ref'd), this Court need neither consider whether the activities of these Defendants were sufficient to constitute "doing business" within the language of the Texas long-arm statute nor decide whether federal or Texas law governs amenability to suit in this Court on a federal claim, *compare Jaftex Corp. v. Randolph Mills, Inc.*, 282 F.2d 508 (2d Cir. 1960), *with Arrowsmith v. United Press International*, 320 F.2d 219 (2d Cir. 1963) (en banc); see generally 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1075 (1969); 2 *Moore's Federal Practice* ¶ 4.25[7] (2d ed. 1979).

Rather, the sole issue before the Court is whether the activities of these Defendants are such that this Court may extend personal jurisdiction over them without offending due process. Due process requires that the nonresident defendant have such "minimum contacts" with the jurisdiction that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). See also *World-Wide Volkswagen Corp. v. Woodson*, —— U.S. ——, ——, 100 S.Ct. 559, 564–566, 62 L.Ed.2d 490 (1980); *Great Western United Corp. v. Kidwell*, 577 F.2d 1256, 1266–70 (5th Cir. 1978), *rev'd on other grounds sub nom. Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed.2d 464 (1979); *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 494 (5th Cir. 1974) (two-part test of "minimum contacts" plus fairness).

---

1. The Court's memorandum opinion of 14 December 1979 is reproduced as an appendix to this order.

■ The inescapable conclusion from the facts is that the activities of these Defendants are enough to satisfy the requirements of due process. The Jackson Marine, Inc. office at Aransas Pass, Texas serves as a base of operations for each of these Defendants to acquire business. While the office may appear to be only that of Jackson Marine, Inc., the interrelation of each of the Jackson Marine corporations with each other is so complete that it is nearly impossible for a court to delineate one from another. Jackson Marine Services, N.V. is a wholly-owned subsidiary of Jackson Marine, S.A.; Jackson Marine, S.A. is a wholly-owned subsidiary of Jackson Marine, Inc. The same individual serves as president of Jackson Marine, Inc., Jackson Marine, S.A. and Jackson Marine Services, N.V.; several other officers of Jackson Marine, Inc., all Texas residents, serve as officers of Jackson Marine, S.A. and Jackson Marine Services, N.V. Directors of Jackson Marine, S.A. hold their meetings in Texas. Advertising of Jackson Marine, Inc. lists a home office of Aransas Pass and refers to Jackson Marine's world-wide operations. Its president, Hugh Jackson, referred in his deposition to Jackson Marine, Inc.'s ability to "know[ ] what's going on out there." Absent a business relationship of Jackson Marine, S.A. and Jackson Marine Services, N.V. with this forum, none of these claims could be made. Further, both of these Defendants maintain bank accounts in Aransas Pass and Houston, Texas. Upon such a record, this Court is forced to conclude that "substantial ground for difference of opinion" could not exist and that these Defendants are properly subject to the jurisdiction of this Court. See 4 C. Wright & A. Miller, *Federal Practice and Procedure* § 1069, at 251–53 (1969); 2 *Moore's Federal Practice* ¶ 4.25[6] (2d ed. 1979).

C

■ Although no limitation on federal subject matter jurisdiction is expressly stated in the Jones Act, 46 U.S.C. § 688; see *Pure Oil Co. v. Suarez*, 384 U.S. 202, 203, 86 S.Ct. 1394, 1395, 16 L.Ed.2d 474 (1966) (Although the final sentence in the Jones Act "is framed in jurisdictional terms, . . . it refers only to venue."), it is clear that the power of the courts to decide cases arising under the Jones Act and actions involving the general maritime law is limited. Perhaps this is best illustrated by the Supreme Court's decision in *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), where is recognized that

[m]aritime law . . . has attempted to avoid or resolve conflicts between competing laws by ascertaining and valuing points of contact between the transaction and the states or governments whose competing laws are involved.

*Id.* at 582, 73 S.Ct. at 928. In *Lauritzen*, Justice Jackson set out seven factors to be applied by a United States court in determining whether to take jurisdiction and apply the law of the United States: (1) the place of the wrongful act, (2) the law of the flag, (3) the allegiance or domicile of the injured, (4) the allegiance of the defendant shipowner, (5) the place of contract, (6) the inaccessibility of a foreign forum, and (7) the law of the forum. *Id.* at 583–92, 73 S.Ct. at 928–933; see also *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 441 (2d Cir. 1959) ("the decisional process . . . involves the ascertainment of the facts or groups of facts which constitute contacts between the transaction involved in the case and the United States, and then deciding whether or not they are *substantial* ") (emphasis added), *cert. denied*, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959). In *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the Supreme Court added at least one additional factor: the shipowner's base of operations, *id.* at 309, 90 S.Ct. at 1734, and warned against the determination of jurisdiction by a mechanical application of the several factors set forth in *Lauritzen, id.* at 310, 90 S.Ct. at 1734. In order to facilitate the liberal purposes of the Jones Act, the issue of jurisdiction was not to be decided by the number of contacts with the United States alone, but by "a cold objective look at the actual operational contacts that this ship and this owner have with the United States." *Id.*

■ Based upon the present record and the standards of *Lauritzen, Hellenic Lines,* and *Bartholomew v. Universe Tankships, Inc.,* 263 F.2d 437, 441 (2d Cir. 1959), *cert. denied,* 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959), this Court believes that jurisdiction has been properly invoked. To be sure, a cursory examination of the facts reveals that this litigation has contacts with several maritime jurisdictions. The wrongful act occurred dockside in Great Britain; the vessel flew the Panamanian flag; the injured seaman was a Portuguese national; the allegiance of the shipowner was presumably to the Netherlands Antilles; the place of contracting was in the Netherlands; and the base of operations was in the United States. With such a choice of jurisdictions: Great Britain, Panama, Portugal, Netherlands Antilles, Netherlands, and the United States, it is conceivable that application of the *Lauritzen-Hellenic Lines* "factors" could result in several jurisdictions each claiming substantial contacts to this litigation.

Nevertheless, despite contacts to other maritime nations, this Court is convinced that the contacts to the United States by the location of the base of operations here are substantial. It is not misled by the "facade" of Panamanian vessels and Netherlands Antilles corporations. *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. at 310, 90 S.Ct. at 1734. The Defendants operate as a whole throughout the world. This operation is possible because the parent corporation, Jackson Marine, Inc., headquartered in Aransas Pass, Texas, controls Jackson Marine, S.A. and Jackson Marine Services, N.V. through stock ownership, interlocking directorates, and control of assets, see discussion part II, B. Looking at the "real nature of the operation," *id.* at 310, 90 S.Ct. at 1734, this Court is compelled to conclude that for the purposes of subject matter jurisdiction the Plaintiff was employed by an American corporation on an American ship which, for all practical purposes, was operated from a home office in Texas. In fairness, it does not believe that the United States courts can be of a "substantial . . difference of opinion" on this issue.

■ Bound up in the decision of federal subject matter jurisdiction over a Jones Act case or an action brought under the general maritime law is the related consideration of forum non conveniens. This is so because the factors to be considered in a forum non conveniens dismissal include the same factors relevant to the determination of the exercise of subject matter jurisdiction, *Grammenos v. Lemos,* 457 F.2d 1067, 1074 n.5 (2d Cir. 1972); G. Gilmore & C. Black, *The Law of Admiralty* § 6–64, at 481–82 (2d ed. 1975). In particular, the availability of another forum, as well as other practical considerations such as access to sources of proof, and convenience and cost of obtaining or compelling attendance of witnesses are paramount. *Grammenos v. Lemos,* 457 F.2d at 1074 n.5. This Court, however, is mindful that a dismissal on the grounds of forum non conveniens to allow the plaintiff to pursue his action in another jurisdiction is a particularly harsh approach to the management and control of litigation as it both deprives the plaintiff of bringing suit in the forum of his choice and, unlike a stay, does not toll the running of the statute of limitations. *Id.*

■ A review of the record indicates that the accident occurred dockside in the North Sea and that many of the witnesses and documents are present in England where related litigation is pending. Weighing on the other side of the balance is the Plaintiff's choice of the Eastern District of Texas as the forum for his lawsuit, the presence in Texas of the corporate headquarters of the principal Defendant, and the availability of certain employees of one of the Defendants. Hovering over these considerations is the Plaintiff's fear that judgment rendered by the Queen's Bench Division of the High Court of Justice may be illusory in that there is a possibility that the Defendants may not have assets subject to a judgment in England and that the judgment could be difficult to collect elsewhere. Considering these factors, this Court believes that a dismissal for forum non conveniens is clearly unwarranted.

This is especially true in light of the factors taken into account by the Court in sustaining subject matter jurisdiction. See G. Gilmore & C. Black, *The Law of Admiralty* §§ 6–63, 6–64 (2d ed. 1975).

Having decided that sound judgment does not support the dismissal of this action on the ground of forum non conveniens, there remains the possibility of entering a stay of this litigation until the dispute can be resolved in another forum. A related matter, the issuance of a stay to prevent multiplicious litigation and to enforce an injunction entered by an English court restraining the Plaintiff from proceeding in this action was discussed in an earlier memorandum opinion. At that time a stay was denied as it was the opinion of the Court that the Defendants had not carried the requisite burden. In this instance, the purpose of the stay, although achieving the same result as the stay earlier denied, primarily would serve to protect the jurisdiction of the Court until an appropriate forum can be found for this litigation. On balance, because this Court is convinced that this Court has jurisdiction of the subject matter, that the action should not be dismissed on the ground of forum non conveniens, and that no other jurisdiction clearly preponderates over the Eastern District of Texas for convenience, it declines to enter a stay. This decision is reinforced by the injustice in requiring the Plaintiff, a paraplegic, to forego suit in the forum of his choice so that he might be cast about to find justice elsewhere.

So ordered.

## APPENDIX

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### BEAUMONT DIVISION

| | | |
|---|---|---|
| INOCENCIO FERNANDO CASTANHO | ⸹ | |
| V. | ⸹ | CIVIL ACTION NO. B–79–437–CA |
| JACKSON MARINE, INC., JACKSON MARINE, S.A., AND JACKSON MARINE SERVICES, N.V. | ⸹ | |

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

This is a motion for a stay of proceedings in this Court pending the outcome of a suit filed between the Plaintiff, Inocencio Fernando Castanho, and one of the Defendants, Jackson Marine, S.A., in the Queens Bench Division of the High Court of Justice in London, England.

On 11 February 1977, the Plaintiff, a Portuguese national, was severely injured when struck in the neck by debris from an exploding oil drum while he was employed as an oiler aboard the M/V AMERICAN MOON at dockside in Great Yarmouth, England. Castanho was hospitalized for several months in England and, eventually, after obtaining the approval of his physicians, was allowed to return to his native Portugal. He now lives there as a paraplegic.

Approximately seven months after his accident, Castanho brought suit in the Queens Bench Division of the High Court of Justice against Brown & Root (U.K.), Ltd. Subsequently on 10 November 1977, his action was amended to name Jackson Marine, S.A., one of the three Defendants in this case, as a defendant. As of yet there has been no trial on the merits.

Sometime later, Castanho was apprised of the relative advantage of bringing his law-

suit in the United States, rather than in England. Most probably the lure of larger damage awards in these courts prompted counsel to advise an American action. But, for whatever reason, suit was filed in this Court on 18 July 1979 stating claims under the Jones Act and the general maritime law. In contrast to the English action, however, Castanho sought relief in this Court not only against Jackson Marine, S.A., a defendant in the English action, but also against Jackson Marine Services, N.V., a Netherlands Antilles corporation, and Jackson Marine, Inc., a Texas corporation.

Prior to bringing his suit in this Court, Castanho sought to discontinue his English action. The English court was not receptive and issued an order restraining its plaintiff from proceeding in another forum against any of several potential defendants. It provided in part:

> ORDERED AND DIRECTED that the Plaintiff INOCENCIO FERNANDO CASTANHO by himself his servants or agents or otherwise howsoever be perpetually restrained and an Injunction is hereby granted perpetually restraining him from commencing or causing to be commenced or continuing or prosecuting any further or other proceedings in the United States of America or elsewhere against JACKSON MARINE INC., JACKSON MARINE S.A., JACKSON MARINE SERVICES N.V., JACKSON MARINE NEDERLAND B.V., BROWN & ROOT INC., BROWN & ROOT (UK) LIMITED or any of them directed to obtaining damages for personal injuries suffered and losses and expenses incurred as a result of an accident which occurred on 11th February 1977 on board the ship "AMERICAN MOON" at Great Yarmouth . . .

This order was affirmed by a three-judge panel of the Court of Appeal on 30 November 1979.

In response to Castanho's complaint filed in this Court, the Defendants, each represented by the same counsel, filed a motion to dismiss alleging several grounds under Rule 12 of the Federal Rules of Civil Procedure, a motion to compel the Plaintiff's attorneys to prove their authority to represent the claimant in this action, and a motion to stay the jurisdiction of this court pending the outcome of a previously filed litigation in the United Kingdom. A hearing was held on these motions on 6 December 1979 at which time the motion for a stay was denied and the other motions were continued.

I

As a principle of hornbook law, neither the law, nor the language of the English injunction is binding on this Court. R. Leflar, *American Conflicts Law* § 53, at 103 (3d ed. 1977). The sole force of the injunction is directed to the parties named in it and then only to the extent that the issuing court is able to enforce it. While some courts, as a matter of comity will recognize an injunction of another court prohibiting a party from proceeding in another jurisdiction, or stay the action, there is no legal compulsion to do so. *Id.* Indeed, the most that can be said for either approach is that the "unseemly race for first finality is . . . avoided." *Id.*

To the extent that "every contract, report, physical object . . . and all the witnesses to this accident are to be found within the jurisdiction of the English court," as the Defendants argue in their brief, and that going forward with any meaningful discovery could place any of the Defendants in contempt of the English court, this Court will stand ready with relief when the abstract possibility is reduced to a near certainty.

II

The power of a court to stay the proceedings before it is inherent in every court. *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936) (Cardozo, J.); *Bechtel Corp. v. Local 215, Laborer's Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976); *Dellinger v. Mitchell*, 143 U.S.App.D.C. 60, 64, 442 F.2d 782, 786 (D.C. Cir.1971); *Nelson v. Grooms*, 307 F.2d 76, 78 (5th Cir. 1962). Indeed, in some cases, a

stay pending the outcome of litigation in another court between the same parties, involving the same or controlling issues, is an appropriate means of avoiding unnecessary duplication of judicial machinery. *Aetna State Bank v. Altheimer*, 430 F.2d 750, 755 (7th Cir. 1970); *ACF Indus., Inc. v. Guinn*, 384 F.2d 15, 19 (5th Cir. 1967), *cert. denied*, 390 U.S. 949, 88 S.Ct. 1039, 19 L.Ed.2d 1140 (1968); 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1360, at 638 (1969). The power of a United States district court to issue a stay is broad, *Bechtel Corp. v. Local 215, Laborer's Int'l Union*, 544 F.2d 1207, 1215 (3rd Cir. 1976), but it also rests within the sound discretion of the district court, *Ohio Environmental Council v. United States District Court*, 565 F.2d 393, 396 (6th Cir. 1977); *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963). Because each party to a lawsuit has a right to an expeditious determination of his claim, *Ohio Environmental Council v. United States District Court*, 565 F.2d 393, 396 (6th Cir. 1977), the district court must weigh competing interests in order to reach a fair decision, *Bechtel Corp. v. Local 215, Laborer's Int'l Union*, 544 F.2d 1207, 1215 (3rd Cir. 1976); *Nelson v. Grooms*, 307 F.2d 76, 78 (5th Cir. 1962). The burden is squarely on the party seeking the stay to show that there is a pressing need for a delay. *Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936); *Ohio Environmental Council v. United States District Court*, 565 F.2d 393, 396 (6th Cir. 1977). As set out by the United States Supreme Court,

> [T]he suppliant for a stay must make out a clear case of hardship or inequity, in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.

*Landis v. North American Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936) (Cardozo, J.). In this case that burden has not been met.

**A**

The parties are not identical. In the English action, Castanho has brought suit against only one of the Defendants in this action: Jackson Marine, S.A. In the instant case, Jackson Marine, Inc., Jackson Marine Services, N.V., and Jackson Marine, S.A. are all named as Defendants.

Further, at this time, there is some suggestion that even if the Plaintiff were to recover against Jackson Marine, S.A. in the English courts, he would be unable to collect on his judgment as Jackson Marine, S.A., a Panamanian corporation, may have no reachable assets. Surely, here there is a fair possibility that a stay would "work damage" to the Plaintiff.

**B**

In "mak[ing] out a clear case of hardship or inequity," the Defendants argue that to allow this action to go forward in this Court will afford the Plaintiff two bites at the apple of damages. They ask:

> Assuming Mr. Castanho were *not* successful [in England], would he be given the right to re-litigate here all of the issues raised and judicially determined by a court of competent jurisdiction in England? If Mr. Castanho *were* successful in England, would he also be permitted to recover again in the United States? Would he be allowed to choose between the two judgments on the ground that the highest is the fairest, irrespective of due process considerations or double jeopardy? Would he offset one judgment against the other?

Defendants' Supplemental Brief p. 9.

Assuming, but not deciding, that modern principles of collateral estoppel would preclude the Plaintiff from relitigating issues resolved adversely to him in a prior proceeding, see *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), it is suggested that the Defendants' questions answer themselves. The Defendants must show more than this to show hardship and inequity.

The motion for a stay is denied.